Hunt v. Smith.

---

HOLLOWAY W. HUNT, administrator *cum testamento annexo* of James T. Watters, deceased,

*v.*

SEYMOUR R. SMITH, administrator of Nancy M. Watters, deceased, ZION EVANGELICAL LUTHERAN CHURCH OF GERMAN VALLEY et al.

---

ZION EVANGELICAL LUTHERAN CHURCH OF GERMAN VALLEY

*v.*

SEYMOUR R. SMITH, administrator of Nancy M. Watters, deceased, et al.

[Submitted April 10th, 1899.  Decided May 25th, 1899.  Filed September 26th, 1899.]

1. A will which gives the wife of testator all his personal estate for and during her natural life, and provides that, if needed by her for her comfort and maintenance, she shall use the principal as well as the interest, bequeaths a life estate in the personalty, with a power to use only so much of the principal as is necessary for her comfort and support.

2. An executrix of a will which gives her a life estate in the real and personal property of testator becomes a trustee for the residuary legatees, on proving the will, and under obligation to keep accurate accounts of the estate, and keep its funds separate from her own.

3. In an action against an executrix to compel an accounting, she will be required to account for what she actually received, and will not be credited for an amount allowed by the orphans court for uncollectible notes and mortgages inventoried, where it appears that the same were afterwards collected.

Hunt v. Smith.

4. An executrix who fails to keep an account of the amount realized from the sale of certain personal property in which she ha a life estate, will be charged with the value as inventoried, although part of the property may have been consumed in its use before the sale.

5. In an action against the estate of an executrix to compel an accounting for assets which came into her hands as executrix, it appeared that she had not kept any account of her trust or of moneys collected. She inventoried several notes as bills receivable of her testator's estate, and on her death only part of them were found in her possession.—*Held*, that she should not be charged with the collection of the missing notes.

6. In an action to compel an accounting, brought by the residuary legatees against the personal representative of an executrix under a will which, by its terms, gave her a life estate in all of testator's personal property, and so much of the principal as was necessary for her comfort and maintenance, her estate should not be charged with an amount paid by her out of the funds of her husband's estate for a suitable residence, but her heirs will be decreed to convey the title thereto to the residuary legatee.

7. The heirs of an executrix who took title to real estate in her own name in payment of mortgages due to her decedent's estate, will be decreed to convey such real estate to the residuary legatee under the will of the first decedent, in an action by the residuary legatee against the personal representatives of the executrix to compel an accounting.

8. Where a trustee commingles trust funds with her own so that they are indistinguishable, and manifestly constitute the greater part of her estate, the *cestui que trust* is entitled to precedence over creditors of the trustee in the payment of his claim out of funds in the hands of the trustee's executor.

9. An executrix, shortly after her testator's death, deposited a sum of money in her own name, a part of which consisted of a check which was found in testator's possession at the time of his death and inventoried. It was also shown that shortly after his death she had some valuable bonds in her possession, and that she had, in her inventory, undervalued funds of testator's estate on deposit in bank. The evidence further disclosed that she had lived with her husband for some time, and might have acquired the amount by the usual perquisites of a farmer's wife, although at the time of her marriage she had no property which would yield such a sum.—*Held*, where the residuary legatee had an opportunity to object to the omission of such funds and bonds from the inventory, if improperly omitted, that, in an action to compel an accounting brought by him against the executrix, the fund so deposited and the bonds would not be declared to be the property of her husband's estate.

On final hearing on bill, answers, cross-bill and proofs in open court.

*Mr. William H. Morrow*, for the complainant.

Hunt v. Smith.

*Mr. Elmer King* and *Mr. Willard W. Cutler*, for the church.

*Mr. Alfred Mills*, for Smith, defendant.

PITNEY, V. C.

The complainant is the administrator *cum testamento annexo* of James T. Watters, deceased, who died June 11th, 1882, testate of a will, of which he appointed his widow, Nancy M. Watters, his sole executrix, who took possession of his whole estate. On July 27th, 1882, she filed an inventory, showing a personal estate amounting to $17,063.21, composed principally of bonds and mortgages and promissory notes, the interest on which was added up to July 8th, 1882. She settled her account as executrix in the orphans court of Hunterdon county on November 5th, 1883, showing a balance in her hands of $12,365.44.

Mrs. Watters died intestate in October, 1897. Letters of administration were issued by the surrogate of Warren county to the defendant Seymour R. Smith on the 3d of November, 1897, who filed his inventory on the 16th of November, 1897, showing a personal estate of $11,546.81. Among the items in this inventory are two or three promissory notes, amounting to between $600 and $700, which are found in the inventory of Mrs. Watters, as executrix of her husband's estate.

The object of the original bill is to hold Mrs. Watters and her administrator as a trustee for the purposes of the will of James T. Watters, for the whole of this personal estate, and also of certain real estate of which she died seized and which it is charged in the bill was purchased with the funds of the estate of James T. Watters. Her heirs-at-law are parties defendant and have not answered.

Being met with the rule laid down in the case of *Bradway* v. *Holmes, 5 Dick. Ch. Rep. 311*, the defendant the Zion church, which is the residuary legatee named in the will of James T. Watters, filed its cross-bill, claiming the whole of the personal estate of Nancy Watters as belonging to it as such residuary legatee, subject to the payment of a few small legacies provided

Hunt v. Smith.

by the will, payable at the death of Mrs. Watters, and also claiming that the lands and real estate previously mentioned, of which Nancy Watters died seized, were held in trust by her for its benefit as residuary legatee of James T. Watters.

The will of James T. Watters, which gives rise to this controversy, provides in the second and third items as follows:

"*Second.* I hereby give, devise and bequeath unto my beloved wife, Nancy M., for and during her natural life, all my real estate wheresoever situate, except so much as I may hereafter dispose of in this my will.

"*Third.* I give and bequeath, in addition to the above, to my wife, all my personal estate for and during her natural life, and if needed by her for her comfort and maintenance, she shall use the principal as well as the interest, except so much as hereinafter disposed of. The above provision for my wife shall, if accepted by her, be in lieu, instead and in bar of her right of dower in my lands and real estate, either by common law or by statute."

By the fourth to the thirteenth items inclusive, divers small legacies are given, some to be paid in the lifetime of the widow and others to be paid after her decease.

"*Fourteenth.* I do order and direct after the death of my wife, all my real estate, not herein disposed of, shall be sold, and the proceeds, together with any undisposed-of personal estate, left by my wife, shall be taken to pay the aforesaid legacies mentioned, which become due on the death of my wife, and if not enough money is realized to pay them in full, then the proceeds are to be divided among the several legatees *pro rata.*"

Notwithstanding the bold and ingenious argument of the counsel for Mrs. Watters' administrator, I am unable to feel the least doubt as to the true construction of this will. The bequest of the personal estate was expressly limited to a life estate in the wife, with the superadded power of using so much of the principal as might be needed for her comfort and maintenance. The case is not complicated by a general power of disposition given to the life tenant, and hence is far within the line of authorities furnished by our own reports, commencing with *Borden* v. *Downey, 6 Vr. 74; S. C., 7 Vr. 460,* followed by *Pratt* v. *Douglas, 11 Stew. Eq. 516 ; Stevens* v. *Flower, 1 Dick. Ch. Rep. 340 ; Wooster* v. *Cooper, 8 Dick. Ch. Rep. 683 ; Robeson* v. *Shotwell, 10 Dick. Ch. Rep. 318.*

By her appointment as executrix of the will she was made a trustee of the personal estate, and by proving the will she accepted that trust with all its responsibilities, and it at once became her duty to deal with it strictly as a trustee should who was not otherwise interested in the estate, that is, collect the moneys, keep them separate from her own funds, and when re-invested properly ear-mark the securities so that they could be easily distinguished from her own securities, and to keep an account of the receipts and disbursements thereout, so that at her death her dealing with the estate would clearly appear, and securities which she left could be easily distinguished from those belonging to her individually.

Instead of pursuing this course, the proofs show that, from the start, she treated all the assets of the estate as her own individually, mingled the same with her own moneys; opened a bank account in her own name, and took all securities for new investments of the funds of her husband's estate in her own name; purchased real estate with those funds and took the title in her own name and took conveyances in her own name from mortgagors of premises mortgaged to her husband, in satisfaction of the mortgage debt; so that with the exception of two or three old promissory notes amounting to five or six hundred dollars, which were inventoried by her as part of her husband's estate and which were found in her possession at her death and inventoried by her administrator, there were no means left for the administrator *cum testamento annexo* and the residuary legatees to trace the personal estate of the testator, or to know how she had dealt with it.

The administrator *cum testamento annexo* and the residuary legatees have, at great trouble and considerable expense, shown by actual proofs what moneys were collected in cash by Mrs. Watters from the proceeds of her husband's personal estate, and in most cases just what disposition she made of the money so collected.

The proofs establish the fact that two certain pieces of real estate of which Mrs. Watters died seized were conveyed to her by the mortgagors of certain mortgages held by her husband

and inventoried by her as part of his estate, in payment and discharge of the mortgages, and that a house and lot of which she died seized, situate in Hackettstown, Warren county, and which she personally occupied, was purchased by her shortly after her husband's death at an expense of $3,900 with moneys which she realized from the choses in action belonging to his estate. One other piece of real property—the Beatty property—of which she died seized she obtained by conveyance from the mortgagor of a mortgage for $800 which she held in her individual name for cash loaned by her, and which it was alleged by the complainant represented money of her husband's estate which she had loaned to the mortgagor.

It further appeared that she never kept any account as trustee, but, shortly after the proof of her husband's will, drew from the Hackettstown bank a sum of upwards of $900 standing to his credit at his death, and deposited the greater portion of it to her own credit, and afterwards placed all moneys received from the proceeds of the estate to her own personal credit, and if she had any moneys of her own, which is denied by the complainant, she mingled them with the moneys of the estate and treated the funds of the estate as her own property.

By means of Mrs. Watters' bank account and the proof of witnesses, the complainant succeeded in tracing the greater portion of the collections made by her from the personal assets of her husband's estate directly or secondarily into the investment in the securities which were found by her administrator and inventoried as her estate.

The inventory of her husband's estate—$17,063.21—was composed of notes and bonds and mortgages (with interest computed to July 8th, 1883, twenty-seven days after the death of her husband) and $855 cash in bank and in the house, amounting to $15,517.21, and farming utensils, implements, horses, cattle, hay and grain, household goods and chattels, amounting to $1,546, including $185 for growing grain in the ground.

In her account, settled in November, 1883, she charged herself with the whole of the inventory, and prayed and received an allowance thereout "for amount of notes and mortgages

appraised and uncollectible $3,208.67," claiming nothing for shortage on the movable chattels. She also obtained credit for the ordinary expenses of settling the estate, doctor's bill and funeral expenses, and for one or two legacies paid, and $521.26 for commissions, in all $4,697.77, showing a balance in her hands of $12,365.44. It was, however, proven that of that sum of $3,208.67 allowed for uncollectible assets, she actually collected the greater portion in cash. In fact, the proofs account for every item inventoried by her except half a dozen or more small notes amounting in the aggregate to a trifle over $1,000, and of these, three, amounting to five or six hundred dollars, were found among her assets at the time of her death, and were inventoried by her administrator. Of the payment of the remainder of these last-mentioned notes the administrator *cum testamento annexo* was unable to find any trace, and the notes themselves were not found.

The proofs show that the collections in cash from the various securities inventoried amounted to $11,705, including interest (amounting to $52.65) from the date of her husband's death to the 8th of July, 1882, twenty-seven days, which, with the cash in bank and house, amounted to $12,560.52. Of course, being called to account in this court as trustee, she must account for what she actually received without regard to the allowance by the orphans court. Deducting that sum of $52.65, interest for twenty-seven days, from $12,560.52, leaves $12,507.87 cash received, besides interest from the time of her husband's death. To that must be added $100.15, cash in the Hackettstown bank over and above the amount inventoried. Add to this the amount of the inventory of movable chattels, $1,546, and the amount received from the sale of wood and timber from the lands of her husband, $936.03, and we have $15,090.05. Against that must be credited the amount allowed her for expenses, legacies and commissions, amounting to $1,489.07, leaving a balance of $13,600.98.

The administrator of Mrs. Watters contends that Mrs. Watters ought not to be charged with the whole amount of $1,546 for goods and chattels charged against her in the inventory, on

the ground that she must have used up a part of them for living, and that as to part of the articles she could not in the natural course of things have realized on them, although charged with them.

The difficulty of acceding to this argument is that she is in the position of a trustee who deliberately failed to keep any account. An examination of the inventory shows that the appraisement was made on a basis of moderate prices. A small part consists of consumable articles, and such as were consumed were replaced at once by the products of the farm. There is proof that either in the spring of 1883 or that of 1884 she had a vendue at the farm. No account seems to have been kept, or if any was kept none was produced, of the proceeds of that sale. She is shown to have been a careful, thrifty woman. The probability is that the sale took place in the spring of 1883, because in that spring she bought a house and lot in Hackettstown for her personal residence and moved there from the farm ; so that she probably knew when she settled her account in the fall of 1883 whether she had met with any loss on the goods and chattels inventoried. I cannot see my way clear to make any abatement from this item.

The complainant contends that in addition to these amounts she should be charged with the amount of the small promissory notes which I have mentioned, none of which were found among her assets at her death, nor were the complainants able to produce any proof of their actual payment. The argument is that the fact that she preserved the notes of the same class that were actually found for so long a time, namely, from 1882 to 1897, shows that she would also have preserved the other notes which were not found if they had not been paid to her, and that the fact that they were not found among her papers is *prima facie* proof that they were paid. And he argues, and rightly, that it was her own fault in not keeping an account of what she did collect that her estate is now in the predicament in which we find it. While there is much force in this argument, I feel constrained not to accede to it, and to charge her only

with what the proofs show she has actually received, namely, with the sum of $13,600.98.

Her administrator claims that against this she should be credited with the cost of the Hackettstown house, and that the residuary legatee should be compelled to take that house as so much cash. The persons in the opposite interest claim that she had no right to invest the money in that house, and that it has very much depreciated in value and should be sold and her estate held liable for any loss.

I think that the position taken by the administrator of Mrs. Watters is the better one. Her husband intended that she should live comfortably. The farm was a lonesome place for her to live, a long way from church and market, and I think if she had applied to this court it would, under the circumstances, have authorized her to make the investment in a house of the size and character of that in question, placing the title of course in her name as trustee of her husband's estate. The price at that time was moderate, and if the court would have approved of it at that time, in advance, the rule is that in the absence of special circumstances it will approve of it *nunc pro tunc.* I therefore think she must be credited with the cost of that house, $3,900, leaving a balance of $9,700.98 as of the date of her death, and her estate must be charged with interest upon that amount since her death at the average rate which the securities in the hands of her administrator have produced.

Her heirs-at-law must be decreed to convey the house and lot to the church, and the administrator of Mrs. Watters must be decreed to pay, out of the sum of $9,700.98—the amount due—each of the legacies which are not yet paid, and pay the balance to the church as residuary legatees.

The heirs-at-law must also be decreed to convey to the church the two pieces of real estate which were conveyed to Mrs. Watters in satisfaction of mortgages inventoried by her as belonging to her husband's estate.

The administrator of Mrs. Watters must be decreed to pay to the complainant, the administrator *cum testamento annexo* of James Watters, the amount he has collected from securities

Hunt *v.* Smith.

which came to his hands and which were part of the estate of James Watters.

I think that under the circumstances the estate of Mrs. Watters must pay the costs of these proceedings. The whole occasion for a suit has arisen from her failure to do her duty as trustee in not keeping an account of her transactions, and in mingling the funds of the estate with her own. The will is perfectly clear, and even if it were in any degree doubtful any question arising on it could have been settled at a trifling expense as compared with the costs which have been necessarily incurred by the complainant in hunting up the evidence to make proof of the amount of moneys actually collected by Mrs. Watters from the assets of her husband's estate.

If the estate in the hands of her administrator is not sufficient to pay the amount I have found due to the complainant and the legatees, with the costs and commissions and counsel fees of her administrator, then resort may be had to the property conveyed to her by Beatty in satisfaction of a mortgage given to her for money loaned, mentioned in the pleadings.

No proof has been adduced that there are any other debts due from her estate, except what may be considered as preferred debts and are probably already paid, beside those that have been adjudicated upon in this cause. But if there were any other debts, as the great body of her estate came from her husband's estate and she has rendered it difficult to trace the investments which have been made with her husband's funds, the residuary legatees of her husband's estate should, upon well-settled principles, have precedence. *Smith* v. *Combs, 4 Dick. Ch. Rep. 420; Standish* v. *Babcock, 7 Dick. Ch. Rep. 634.*

For that reason I think resort may be had, as I have suggested, to the Beatty real estate for any deficiency.

Some discussion arose over some facts to which I have not yet adverted, namely, that shortly after Mr. Watters' death and before the proof of the inventory, Mrs. Watters deposited to her credit in the Hackettstown bank the sum of $1,875, of which $25 was a check found in her husband's possession at the time of his death and inventoried, and the balance of $1,850 con-

sisted of cash and check. It was argued that this latter fund was really a part of her husband's estate and was improperly withheld by her from her inventory. And it further appears that immediately after the death of her husband she was found in possession of three negotiable bonds of $500 each of the Aquackanock Water Company, on which she received regularly the interest and placed the same to her credit, and subsequently and shortly before her death collected the principal, showing an estate of a little over $3,000, which the complainant, as administrator, argues that she must have got from among her husband's assets. And he adduces, as an additional circumstance indicating this origin of these funds, that she deliberately undervalued the cash to her husband's credit in the Hackettstown bank, and put it in her inventory as $815 when it was really $915.

The proof is that at the time of her marriage, about 1870, she had no property whatever; that her father died shortly after and left her the annual income of a certain share of his estate which amounted to between $60 and $80 a year, and which she received for a few years, and then, by a defalcation of the trustee of her father's estate, the income from that source entirely failed; and it is argued that it is impossible to suppose that she had accumulated this estate in the dozen years that she lived with her husband.

However suspicious these circumstances may be, I cannot hold them as sufficient to charge her estate with any part of the sum just mentioned. It was the duty of these residuary legatees if they had notice, and the presumption is they did have notice, of the terms of the will, to look at that inventory at the time and except to it if it was not complete. Her husband and she had about twelve years of married life, so that he was about forty years old and she was a trifle younger on their wedding day. He evidently was a man of considerable means at that time, while she was poor, and both were thrifty. Now as they had no children it was not unnatural that he should give her the ordinary perquisites of a well-to-do farmer's wife, namely, the proceeds of the dairy and poultry. The income from those sources would

easily amount in the twelve years, if carefully husbanded by her, to two or three thousand dollars; and it is by no means improbable that she might honestly have been possessed of $1,850 which she deposited in bank, and also the three Aquackanock water bonds.

But it is further argued on behalf of Mrs. Watters that the amount of her estate shows that she must have spent more than the interest of her husband's estate in her support, and that on the principle of *Cox* v. *Wills, 4 Dick. Ch. Rep. 573*, she was not obliged to take any part of the interest of her own estate for that purpose. There was no proof on that topic and no contention at the hearing that the interest on the personal estate of her husband, with the income from the farm, was insufficient for her comfortable support. Further, it appears that in the last years of her life she made a loan of $2,000 to a relative, secured by an unrecorded mortgage, for which she charged no interest, and that after some five or six hundred dollars had been paid upon it she surrendered and made a present of the mortgage to that relative. That accounts for about $1,500 of her private fortune, which, with the surplus of her personal estate over and above the amount which I have found that she owes her husband's estate, together with the piece of real estate which she took in payment of a mortgage given to herself, are nearly sufficient to account for the whole of her supposed personal estate.