## Gaines, et al. v. Hill.

(Decided March 8, 1912.)

## Appeal from Henderson Circuit Court.

1. Marshalling.—A second mortgagee having a lien only on the husband's property cannot, under the doctrine of marshalling, require a prior mortgagee having a lien on the same property, and also on the property of the wife which was mortgaged merely to secure the husband's debt, first to exhaust the wife's property before proceeding to subject the husband's property.

2. Subrogation.—Where husband and wife unite in a mortgage to a bank of his and her property to secure his debt, and the mortgage is put to record, and the husband subsequently mortgages his property alone to secure a debt to another person, and the wife dies, and the bank subjects a portion of the husband's property and also the property formerly belonging to the wife, the children of the wife will be subrogated, as against the second mortgagee, to the lien of the bank on the unsubjected portion of their father's property, to the extent of the value of their interest in their mother's lot, to be determined by deducting from the sale price of the lot the cash value of their father's life interest therein on the date of sale, his interest being a life interest in the whole sum, as the property was acquired, and he and his wife were married and had issue born alive before the passage of the Weissinger Act in 1894.

VANCE & HEILBRONNER for appellants.

W. P. McCLAIN and THOS. E. WARD for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Reversing.

On April 14, 1893, W. T. Gaines borrowed of the Ohio Valley Banking & Trust Company the sum of $1,150, for which he executed and delivered his two promissory notes, one for $400, payable in four months, and one for $750, payable in twelve months from date. To secure the payment of the notes, W. T. Gaines and his wife, Mary Gaines, the mother of appellants, Morris and Sarah Gaines, mortgaged to the Ohio Valley Banking & Trust Company three lots of ground in Henderson, Kentucky. Two of these lots belonged to W. T. Gaines, while the third belonged to Mary Gaines, it having been conveyed to her by Alexander Rankin and wife by deed dated December 1, 1885, and recorded in Deed Book No. 11, page 250, Henderson County Clerk's office.

On August 27, 1896, W. T. Gaines executed to appellee, Eli Hill, a mortgage on his individual property theretofore mortgaged to the Ohio Valley Banking & Trust Company, to secure Hill as surety in two notes to the Henderson Trust Company, of Henderson, Kentucky.

On April 22, 1897, the Ohio Valley Banking & Trust Company brought suit to enforce its mortgage lien, and to subject the mortgaged property to the payment of the two notes executed to it by W. T. Gaines.

In December, 1899, appellee, Eli Hill, alleging that he had paid the indebtedness for which he was surety, brought suit to recover a personal judgment against W. T. Gaines, and to enforce his mortgage lien.

These actions were brought during the lifetime of Mary Gaines, and were afterwards consolidated. On February 26, 1898, and after the death of Mary Gaines, the Ohio Valley Banking & Trust Company, amended its petition, and set forth the death of Mary Gaines and the names of her surviving children, to-wit, Morris C. Gaines, Sarah Gaines, William Gaines, Harris Gaines, Mamie Gaines and Virginia Gaines, all infants, who were thereafter brought before the court by proper process. At that time the ages of the children were as follows: Morris fifteen, Sarah thirteen, William eleven, Harris ten, Mamie seven and Virginia three. Prior thereto certain property belonging to W. T. Gaines had been sold, and the greater portion of the bank's debt was satisfied. There remained unsold the lot belonging to Mrs. Gaines and the lot involved in this controversy. On September 13, 1902, it was adjudged that there was still due the bank on its original judgment the sum of $338.58, with interest from July 23, 1900, and costs, and that the lot belonging to Mary Gaines be sold for the payment thereof. This lot was appraised at $600. It was purchased by Thos. E. Ward, attorney for W. T. Gaines, for the latter, but he having declined to pay for it, it was turned over to the bank.

As a defense to the suit of Eli Hill, W. T. Gaines pleaded a discharge in bankruptcy. Hill charged fraud on the part of Gaines. This contention was sustained, and on January 29, 1904, personal judgment was rendered in favor of Hill. Subsequently it was found that one lot belonging to W. T. Gaines, remained unsold, and the court ordered a sale of this lot to satisfy Hill's judgment. The lot was sold, and appellee Hill became the

purchaser at the price of $510. To this branch of the case the infant children of Mary Gaines were not parties, as their father who was alive was sole owner of the property mortgaged to Hill. After the sale, however, appellants, Morris and Sarah Gaines, filed their petition, asking to be made parties, and that it be taken as an answer, counterclaim and cross-petition against appellee Hill. In addition to the foregoing facts, the petition alleges that appellants, as children of their mother, succeeded to two-sixths interest in their mother's property on her death, subject to their father's right of courtesy; that the lot in controversy having been sold to pay their father's debt, they were entitled to be subrogated to the rights of the bank in the remaining lot owned by their father, and to have the lot sold to repay them for their lot sold to satisfy his debt. Appellee filed an answer admitting practically all the allegations of the petition, but denied that the debt to the Ohio Valley Banking & Trust Company was the debt of W. T. Gaines, and alleged that the money was borrowed for the benefit of appellants' mother, Mary Gaines. This latter allegation was denied by reply. Upon submission of the case, judgment was entered dismissing appellants' petition, and confirming the commissioner's report of sale. From that judgment this appeal is prosecuted.

As the two notes executed to the Ohio Valley Banking & Trust Company and the mortgage by which they are secured show that the money was borrowed by W. T. Gaines, we must hold in the absence of evidence to the contrary that the debt was his, and that Mary Gaines, his wife, mortgaged her property merely to secure his debt. With this question eliminated, we have the following case: W. T. Gaines borrowed from the bank $1,150. To secure this indebtedness, he and his wife mortgaged not only his but her property. Her property being pledged as security for his debt, she, though incurring no personal liability, was in effect his surety to the extent of the property so mortgaged. The mortgage to the bank was duly recorded. Subsequently appellee Hill took a mortgage from W. T. Gaines in which the latter's wife did not join, covering only W. T. Gaines' individual property embraced in the mortgage to the bank. Pending the proceedings by the mortgagees to enforce their liens, Mary Gaines, the mother of appellants, died. She

left six children, appellants and four others, all of whom were infants. Their mother's property descended to them subject to their father's right of curtesy. The property descending to them was subjected by the bank to the payment of their father's debt, leaving unsubjected the lot in controversy, which belonged to their father, the principal debtor. The question is, Are they entitled to be subrogated to the rights of the bank in this lot as against appellee, the second mortgagee? For appellee it is insisted that as he had a lien on the husband's property only, while the bank had a lien on both the husband's and wife's property, he could have compelled the bank, under the doctrine of marshalling, to exhaust the wife's property before proceeding against the husband's property. The doctrine of marshalling, however, applies where the two funds or pieces of property belong to a common debtor, and, therefore, has no application to the facts of this case. On the contrary, it is well settled that a creditor who has a claim against two debtors, one a principal and the other a surety, can not be compelled by another creditor of the principal debtor to exhaust his remedy against the surety before proceeding against the principal. (Trentman v. Eldridge, 98 Ind., 525; Garrett v. Burlington Plow Co., 70 Iowa, 697, 29 N. W., 395, 59 Am. Rep., 461; Thompson v. Spittle, 102 Mass., 207; Mason v. Hull, 55 Ohio St., 256, 45 N. E., 632; Stewart v. Stewart, 207 Pa. St., 59, 56 Atl., 323.) For a like reason a second mortgagee having a lien on a husband's property can not require a prior mortgagee having a lien on the same property, and also on the property of the wife which was pledged merely to secure the husband's debt, first to exhaust the wife's property before proceeding to subject the husband's property. In this case the bank's mortgage was on record. Appellee acquired his mortgage with notice of the fact that all of the property covered by it was embraced in the mortgage to the bank, and that the bank if necessary could subject it to the payment of the debt. Therefore, if appellants are held subrogated to the rights of the bank in the property in controversy, appellee's position is no worse than if the bank had first subjected the property in controversy, which, manifestly, it had the right to do. That being true, there can be no doubt that the mother of appellants, if alive, could have successfully asserted her right to subrogation. Conse-

quently appellants who stand in her shoes, and whose property was taken to pay their father's debt, should have the same right (National Exchange Bank v. Silliman, 65 N. Y., 475). Nor is the fraud of appellants' father sufficient to defeat their right. They do not claim through him, and what he did, therefore, can not affect them. Nor can laches be imputed to them, for being infants, it can not be said that they have failed for an unreasonable length of time to assert their rights.

The lot formerly owned by Mary Gaines descended to appellants and her other children subject to their father's right of curtesy, which was a life estate in the whole thereof, as he and Mary Gaines were married, and the lot was acquired, and they had issue born alive before the enactment of the Weissinger Act in 1894 (Rose v. Rose, 104 Ky., 48; Mitchell v. Violett, 104 Ky., 77). This lot sold for $350, a sum sufficient to pay the balance of the bank's lien. Being subrogated to the bank's lien on the lot in controversy which belonged to their father, to the extent of the value of their interest in the lot that belonged to their mother and which was sold to pay their fathers' debt, it follows that they are entitled to a lien on the lot in controversy for the sum of $350, the price the lot brought less the cash value of their father's life interest therein on the day the lot formerly belonging to their mother was sold. As the other children of Mary Gaines are necessary parties to the action, appellants, on the return of the case, will make them parties plaintiff with their consent, or parties defendant in case they refuse to unite as plaintiffs. The court will then adjudge appellants and the other children of Mary Gaines a lien on the lot in controversy as above indicated, which if voluntarily discharged by appellee, will entitle him to have the sale confirmed. In the event of his refusal to pay off the lien so adjudged, the court will set aside the sale, and order a resale of the property, and apply the proceeds thereof first to the payment of the lien in favor of the children.

Judgment reversed and cause remanded for proceedings consistent with this opinion.