## Morgan et al. v. Meacham et al.

Dec. 16, 1938.

As Modified and Extended on Denial of Rehearing June 23, 1939.

Ira D. Smith, Judge.

Trimble & Trimble for appellants.

White & Clark and W. H. Southall and G. L. Drury for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming in part and reversing in part.

On the first day of August, 1928, Rodman Meacham and his wife, Louise Jones Meacham, wrote their respective wills. Rodman Meacham's will is brief and clear and the construction of it is not in dispute. By the first clause of his will he directed that his just debts be first paid out of his estate. He then willed all the rest and residue of his estate of every kind and description to his wife, Louise Jones Meacham, if she be living at the time of his death, but if she be not living at the time of his death, he then willed and bequeathed his entire estate to his mother, Elizabeth T. Meacham, and if she not be living at his death, then to his brother, Charles M. Meacham, Jr.

Louise Jones Meacham died in April, 1930, survived by her husband, Rodman Meacham, who died in November, 1933, leaving surviving him his mother, Elizabeth T. Meacham, and it is not disputed that all the property Rodman Meacham owned at his death vested in Elizabeth T. Meacham. But the amount, nature and extent of the property owned by Rodman Meacham at the time of his death is in dispute and that question has to be determined by the construction of the will of his wife, Louise Jones Meacham.

The principal question involved in this appeal is the construction of the will of Louise Jones Meacham, and especially the powers and rights of the first taker under the will and the rights of the remainderman.

By the first clause of Louise Jones Meacham's will she directed her just debts be paid first, and by clauses two and three she disposed of certain personal effects, household goods, etc., none of which is in controversy. Paragraphs four and five of the will read as follows:

"Fourth:—I will and bequeath to my Aunt, Miss Lucy Whitlock, of Hopkinsville, Kentucky, during her lifetime, the sum of $150.00 per month to be paid to her monthly out of my estate. Until my estate is finally settled, I direct my executors to pay said sum to her monthly, either from principal or income. Upon final settlement of the estate, this bequest shall become a fixed and preferred

charge upon the estate and said sum of $150.00 per month shall be paid to Miss Lucy Whitlock by my heirs or devisees named in the following paragraph, so long as she may live.

"Fifth:—Subject to the provisions of paragraph four hereof, I will bequeath and devise all the rest and residue of my estate, of every kind and description, to my husband, Rodman Meacham, to be his absolutely during his lifetime, with right to sell, convey and transfer any property which I may own at my death. He shall have full power to use and expend any part or all of said estate for any purpose whatever and without accounting to any one for its use or disposition; but if any of said estate remains at his death then I will and devise such remainder to Mary Louise Perkins, daughter of Dr. and Mrs. T. W. Perkins, of Hopkinsville, Kentucky, absolutely and in fee-simple. If she be not living at the time of my husband's death, it is my will that the interest herein devised and bequeathed to her shall go to her children, if any, and if she has no children, then the same shall in such event be divided among my lawful heirs in accordance with the laws of descent and distribution of the Commonwealth of Kentucky.

"Inasmuch as my husband, who is made the chief beneficiary in this clause, has extensive business operations of his own, and in order to forestall and prevent any controversy between his heirs and my own after the death of both of us, I suggest that he keep an account of the estate going from me into his hands and of the disposition thereof, which account if so kept, shall, be final and conclusive evidence of any interest in my estate to which my heirs and devisees may be entitled upon his death."

By paragraph six she appointed the First National Bank of Hopkinsville, Kentucky, and James Breathitt, Jr., of Hopkinsville, as joint executors of her will with power and authority in them to sell and convey any and all her property, real and personal, owned by her at the time of her death by either public or private sale within their discretion, and directed that James Breathitt, Jr., shall act as the attorney in the settlement and handling of her estate.

The First National Bank of Hopkinsville, Kentucky,

and James Breathitt, Jr., qualified as executors of the will of Louise Jones Meacham, herein called testatrix, and took into their possession the whole of her estate, consisting in a large part of various stocks, bonds, promissory notes, etc., of the approximate value of $170,000. Thereafter, the said bank resigned the trust as executor and made settlement of its accounts with the Christian county court which was approved by that court, and James Breathitt, Jr., continued to act as sole executor until his death in October, 1934. Prior to the death of Rodman Meacham the executors of testatrix's estate had turned over to him a large part of the securities left by testatrix and much of which he had spent, but some of which was left in his hands when he died, and a part of the estate remained in the hands of Mr. Breathitt at the time of his death and was taken charge of by the First-City Bank & Trust Company of Hopkinsville, as executor of Mr. Breathitt's estate.

During the lifetime of Rodman Meacham and after the death of the executrix, his wife, he borrowed $14,000 from the First-City Bank & Trust Company, and to secure the payment of same he pledged certain of these securities coming from testatrix's estate and delivered them to the bank; and it appears that he borrowed the sum of $7,000 from the Planters Bank & Trust Company and pledged other securities of testatrix's estate as collateral to secure the payment of that loan.

In September, 1934, just previous to the death of James Breathitt, Jr., First-City Bank & Trust Company, administrator of the estate of Rodman Meacham, deceased, with the will annexed, and First City Bank & Trust Company in its individual capacity, filed their petition in the Christian circuit court naming therein as defendants, Planters Bank & Trust Company, Mary Louise Perkins, then an infant over 14 years of age, Lucy Whitlock, Elizabeth T. Meacham and James Breathitt, Jr., the latter being the executor of the will of Louise Jones Meacham, deceased, in which action the plaintiffs asked a declaration of rights of all parties involved. The petition set out the wills of Rodman Meacham and his wife, the testatrix, the date of their respective deaths, the money borrowed from the respective banks and the securities of the estate of testatrix pledged by Rodman Meacham to secure the loans; and that the bank account of James Breathitt, Jr., as executor of the will of testatrix was kept at the First-City

Bank & Trust Company and from time to time said executor found it necessary to pay certain preferred charges against the estate of testatrix and in payment of which he created over-drafts in the aggregate sum of $2,308.44 and set out the items paid and the purpose therefor, and asked for a declaration of rights under the Declaratory Judgment Act on the following points:

"(1) What are the rights of plaintiff, First-City Bank & Trust Company, with respect to the over-draft created at said Bank by the Executor of the will of Louise Jones Meacham, deceased, at least to the extent that said over-draft was created by advancements of money by said Bank to pay preferred claims against the estate of Louise Jones Meacham, consisting of the annuity in favor of Lucy Whitlock and taxes against said estate and administrative charges?

"(2) What is the legal effect of the pledge of securities belonging to the estate of Louise Jones Meacham, by her said husband, Rodman Meacham, to borrow funds from First-City Bank & Trust Company and Planters' Bank and Trust Company and whether the pledging of said securities by said Rodman Meacham was such appropriation, or use, of same that said pledged securities must be exhausted in discharging the debts they were pledged to secure, if necessary?

"(3) What are the rights of Miss Lucy Whitlock with reference to the assets belonging to the estate of Louise Jones Meacham and what steps should be taken, if any, by the administrator of Rodman Meacham, with his will annexed, and by the Executor of the will of Louise Jones Meacham, deceased, to protect the rights of Miss Lucy Whitlock?"

Thereafter Mary Louise Perkins, who later married one ——— Morgan, and to whom we will refer as Mary L. Morgan, suing by her statutory guardian, Planters Bank & Trust Company, and Planters Bank & Trust Company, filed their petition in equity against the First-City Bank & Trust Company of Hopkinsville as the administrator with the will annexed and executor of Rodman Meacham, deceased, Mrs. Elizabeth T. Meacham and First-City Bank & Trust Company of Hopkinsville, and Charles M. Meacham, seeking a set-

tlement of the estate of testatrix, and a surcharge of the settlement made in 1930 in the Christian county court by the First National Bank and James Breathitt, Jr., executors, of their accounts, and asked that the administrator or executor of the estate of Rodman Meacham be required to pay the debts of Rodman Meacham from his individual estate to the exclusion of any estate in his hands coming from the estate of his wife, testatrix, and asked that all of the estate of the testatrix left on hand and not used and expended in the lifetime of Rodman Meacham, be adjudged to belong to the plaintiff, Mary L. Morgan.

An order was made referring the cause to the master commissioner to advertise and report claims against the estate and to make settlement with the executors of their accounts. Thereafter the commissioner filed a settlement with the executors of the estate of testatrix.

Thereafter Mary L. Morgan filed another suit against the First National Bank of Hopkinsville, executor of testatrix, and the First National Bank of Hopkinsville, individually, and Ed L. Weathers, liquidating agent of the First National Bank of Hopkinsville, and the First-City Bank & Trust Company of Hopkinsville as executors of James Breathitt, Jr., deceased, and First-City Bank & Trust Company of Hopkinsville, and Lucy Whitlock and the United States Fidelity & Guaranty Company of Baltimore, Maryland, seeking a settlement of the estate of Rodman Meacham, deceased.

Elizabeth T. Meacham filed her intervening petition in the action of Mary L. Morgan, by, etc., against the First-City Bank & Trust Company, etc., involving the settlement of the estate of testatrix, and asserted that by the will of the testatrix, the fee simple title to all the property of the testatrix was vested in her husband, Rodman Meacham, with full power to alienate, convey and devise said property, and that Rodman Meacham in his lifetime took possession of the property so willed him by the testatrix and that he willed all of the said property to the petitioner, Elizabeth T. Meacham, and that she is the legal owner of all the property of Rodman Meacham, owned in his own right and of all the property received by him under the estate of his wife, Louise Jones Meacham, and that no one has any interest in this property. She especially denied any interest or rights of Mary L. Morgan, and the two banks to

which Rodman Meacham pledged certain securities of the testatrix to secure the payment of his notes.

By answer and various other pleadings the issues were finally made and all the actions were consolidated and heard together upon the issues made by the various pleadings we have indicated above.

The cause was submitted for final judgment upon the consolidated actions and the court entered judgment consisting of separate paragraphs dealing with different phases of the issues involved. Mary L. Morgan, Planters Bank & Trust Company, administrator with the will annexed de bonis non of Louise Jones Meacham; Planters Bank & Trust Company, statutory guardian for Mary L. Morgan and S. Y. Trimble, have appealed. Elizabeth T. Meacham, and the executors of the will of Rodman Meacham and James Breathitt, Jr., and Louise Jones Meacham have prosecuted cross-appeals.

The court adjudged that under paragraph four of the will by which testatrix devised to Lucy Whitlock the sum of $150 per month was a preferred claim and this claim must be paid first and in preference to the claims or legacies of any other devisees or legatees. The language of this paragraph of the will is plain and simple. Testatrix directed her executors to pay this sum to Miss Whitlock, even before her estate was settled, and further provided, ''this bequest shall become a fixed and preferred charge upon the estate and said sum of $150.00 per month shall be paid to Miss Lucy Whitlock by my heirs or devisees named in the following paragraph, so long as she may live''; and clause five by which testatrix devised all the rest and residue of her estate, begins with this language: ''Subject to the provisions of Paragraph Four hereof, I will, bequeath, and devise all the rest and residue of my estate, etc.'' By this plain and unambiguous language there is no doubt that it was the intention of the testatrix that this $150 per month to Miss Whitlock be a preferred claim and must be paid in preference to the claims of any other devisee. The judgment is affirmed on this item.

With respect to the contention of Elizabeth T. Meacham, that by the terms of testatrix' will, her husband, Rodman Meacham, became vested with a fee simple title to all the property devised by paragraph four of the will, the court held and adjudged that Rodman Meacham did not take a fee and that Mary L. Morgan

took the estate in remainder. It is to be noticed that at the beginning of paragraph five of the will (subject to the provisions of paragraph four) testatrix willed, bequeathed and devised all the rest and residue of her estate, of every kind and description, to her husband, Rodman Meacham, to be his absolutely *during his lifetime,* with right to sell, convey and transfer any property which she may own at her death. The language of this will must not be confused with that class of wills or deeds by which the devisor or grantor at the beginning devises or conveys an absolute estate and then by a later provision undertakes to make a devise or grant over. Such deeds and wills have been uniformly construed as vesting the first taker with an absolute estate and the attempted devise over is void. However, we have just the converse in the present case. At the outset testatrix makes clear her intention to devise to Rodman Meacham, a life estate only and, with the power to sell and convey and transfer any of her property if he may desire to do so. Testatrix then provided that Rodman Meacham shall have full power to use and expend any part or all of her estate for any purpose whatever, and without accounting to anyone for its use or distribution. Under the later power "to use and expend, etc.," there can be no doubt that whatever assets of testatrix' estate that Rodman Meacham actually used and expended, in the meaning of those words as contemplated by testatrix, did become his absolute property, and he does not have to account for such sums as he may have actually used and expended. But with respect to that part of the estate of testatrix which remained in the hands of Rodman Meacham or the executors of the estate, not used or expended by him, a different situation prevails.

In Slayden, v. Hardin et al., 257 Ky. 685, 79 S. W. (2d) 11, the will of John Spell, the construction of which being involved in that case, reads as follows:

"I, John Spell, being in my right mind and of my own free will herewith, will and bequeath all of my real estate and personal property to my wife, Edna Spell, so long as she lives, *giving her the right to sell, lease or dispose of my real estate in any way she chooses, also sell and dispose of my personal property any way she chooses. I want her to exercise her best judgment in disposing of my property.* At my wife's death, Edna Spell, I want what of my property, real and personal, is left, equally divided

between my nephews, Robert Baxter and Guy Slayden. I want my wife, Edna Spell, to administer over my estate without bond.''

We held that by the provisions of the above will the testator gave his wife a life estate in all his property and further granted her the power to sell and dispose of his property as she may choose, and further created an estate in remainder as to the property that may be left at the death of his wife. We further held that the language ''giving her the right to sell, lease or dispose of my real estate in any way she chooses, also sell and dispose of my personal property any way she chooses,'' was simply a power, which was never exercised by her as to the testator's land, though she did exercise the power as to his personal property which she had consumed, and when Mrs. Spell died without exercising the power as to the land, the power came to an end and the situation would be no different if the power had not been granted; that no one but Edna Spell could exercise the power and after her death it had no effect on the title to the land.

Many other authorities of a similar nature might be cited, but we think the case, supra, is conclusive that the will of the testatrix invested Rodman Meacham with a life estate only in the property devised to him, except, as we have already stated, that portion of it which he actually consumed and used in his lifetime.

The judgment is affirmed in so far as it adjudges that by the terms of the will Rodman Meacham was invested with a life estate with remainder to Mary L. Morgan.

However, the court further held and adjudged that under the terms of the will of testatrix which empowered Rodman Meacham to appropriate to his own use and benefit and for any purpose he might see fit, any part, or all of the estate of testatrix (subject only to the annuity in favor of Miss Lucy Whitlock) whenever Rodman Meacham demanded and received from the executor of testatrix certain items of property, securities, either in kind or in cash, that such action amounted to an appropriation of such property to the absolute ownership of Rodman Meacham in fee simple and was a disposition thereof under the terms of the will, and thereafter, with respect to such items of property, securities and cash so delivered to him by the executor, he became

the absolute owner thereof for all purposes. Upon these premises the court further adjudged that the securities pledged by Rodman Meacham to secure the payment of his personal notes executed to the Planters Bank & Trust Company and to the First-City Bank & Trust Company, respectively, were the absolute property of Rodman Meacham and the said two banks had the right to appropriate said securities so pledged to the payment of their respective notes.

We are unable to agree with the chancellor that the mere fact that the executors delivered to Rodman Meacham possession of the securities in question or other items of the assets of testatrix's estate, amounted to a use or expending of same in contemplation of the will. If the will had ended at the point where testatrix said, "He shall have full power to use and expend any part or all of said estate for any purpose whatever and without accounting to anyone for its use or disposition," a more doubtful question might have been presented. But following the language quoted above and in the same sentence and clause (5) of the will, testatrix said, "but if any of said estate remains at his death, then I will and devise such remainder to Mary Louise Perkins, daughter of Dr. & Mrs. T. W. Perkins, of Hopkinsville, Kentucky, absolutely and in fee-simple. If she be not living at the time of my husband's death, it is my will that the interest herein devised and bequeathed to her shall go to her children, if any, and if she has no children, then the same shall in such event be divided among my lawful heirs in accordance with the laws of descent and distribution of the Commonwealth of Kentucky." It is at once apparent that testatrix intended that that portion of her estate remaining at the death of Rodman Meacham the life tenant, should go to the remainderman, Mary L. Morgan, if living, and if she not be living at the death of the life tenant then such estate in remainder would go to her, testatrix' own kin or heirs under the statute of descent and distribution. And this interpretation is made more manifest by the last paragraph of clause five of the will, which reads:

"Inasmuch as my husband, who is made the chief beneficiary in this clause, has extensive business operations of his own, and in order to forestall and prevent any controversy between his heirs and my own after the death of both of us, I suggest that he keep an account of the estate going from me into his

hands and of the disposition thereof, which account if so kept, shall be final and conclusive evidence of any interest in my estate to which my heirs and devisees may be entitled upon his death."

It is thus seen that testatrix contemplated Rodman Meacham having possession of the assets of her estate, but from the will as a whole it is equally clear that she anticipated that he might not use and expend the entire estate in his lifetime and there would be something of it left, otherwise she would not have created an estate in remainder, contingent upon Rodman Meacham not using and expending the whole estate in his lifetime; nor, would she have suggested that he keep an account "of the estate going from me into his hands and the disposition thereof" in order to forestall and prevent any controversy between their respective heirs. It is clear to our minds that testatrix intended that Rodman Meacham have possession of the assets of her estate but it was not her intention that possession alone would amount to a use and expending of the estate and thereby terminate his life estate and convert it into a fee. And a further reason for this interpretation is that testatrix authorized and empowered Rodman Meacham to sell, convey and transfer any property she may own at her death. It cannot be denied that in order to execute the power thus conferred upon him, it was necessary that he have possession of the property.

After the debts of testatrix, if any she owed, were paid by the executors, then under the terms of the will, it became the duty of the executors to turn over to Rodman Meacham any or all assets of the estate if he so demanded; and, no other trustee being named, the life tenant was in effect the trustee of the remainderman, with power in himself, however, to defeat the trust by consuming the property which he held in trust. But after his death all the assets of the estate left in his hands not actually used and consumed or the proceeds or reinvestments of same, passed under the will to the remainderman, Mary L. Morgan.

The case of Hunt v. Smith, 58 N. J. Eq. 25, 43 A. 428, is very similar in principle to the case at bar. One item of the will in controversy in that case, reads:

"I give and bequeath in addition to the above to my wife all my personal estate for and during her natural life and if needed by her for her comfort and

maintenance, she shall use the principal as well as the interest except so much as hereinafter disposed of.''

The court held that the bequest of the personal estate was expressly limited to a.life estate with power to consume so much thereof as might be needed by her, and that she, the life tenant, was made a trustee of the personal estate and she accepted the trust with all its responsibilities and it became her duty to deal with it strictly as a trustee should who was not otherwise interested in the estate.

We do not mean to hold that Rodman Meacham should be charged with an account for all the assets of testatrix's estate which came into his hands because, as we have already stated, he had the right to use and expend any part or all of the estate and that amount which he actually used and expended, vested in him absolutely. But he must account to the remainderman for so much of the estate as came into his hands which he did not expend or consume.

For the reasons stated the judgment is reversed insofar as it holds that the delivery of the securities or other assets of testatrix's estate to Rodman Meacham, terminated his life estate therein and he became the absolute owner thereof.

The next question to be determined is whether the power to sell, convey and transfer testatrix's property included the power to pledge, mortgage or otherwise put it in lien. The chancellor's holding that Rodman Meacham was the absolute owner of the securities when he pledged them dispensed with the necessity of his passing upon the question of the right under the power to pledge or put them in lien.

It is insisted for the appellant that the words used in the will, ''sell, convey, transfer use and expend,'' do not include the power or right to mortgage or otherwise put in lien any of the assets of the estate and that Rodman Meacham, the life tenant, had no power to pledge the said securities and that the banks acquired no lien against same, but must look to the individual estate of Rodman Meacham for the payment of his personal notes, which he attempted to secure by pledging the assets of testatrix's estate.

It is the general rule in this and many other juris-

dictions that a power to sell does not include the power to mortgage. However, there are exceptions to this rule—depending upon the nature of the instrument as a whole and the things or purposes to be accomplished by putting the property in lien. In the recent case of Welch v. Mann's Ex'r, 261 Ky. 470, 88 S. W. (2d) 1, the court said [page 3]:

> "Although a mortgage may be regarded as a conditional or qualified sale, it is specifically held that a power given a trustee to sell is not a power to mortgage, unless there is something in the instrument granting it disclosing that a mortgage was within the intention of the donor of the power. When the mode of executing a power is definitely prescribed by the creator, the trustee or donee is without authority to employ a different method, and any attempt to do so is void. [Citing cases.] In the case at bar, there is only the power to sell and convey for the purpose, first, of paying the debt on the property; second, for the distribution or reinvestment of the balance of the proceeds; hence, the trial court properly adjudged the mortgage to be invalid."

The difference between the powers granted in the Welch Case supra, and in the case at bar, is at once obvious. In the Welch Case the power specified the purposes for which the land may be sold, viz: paying debts on the property and distribution or reinvestment of the proceeds; whereas in the case at bar testatrix does not limit the purpose for which Rodman Meacham may sell, convey or transfer her property, but gave to him a general and unlimited power as to purpose, and then provided that he shall have power to use and expend any part or all of the estate for any purpose whatever, failing to limit either the purpose or amount. From an examination and analysis of the will as a whole, it is reasonably clear that the testatrix intended that her husband, Rodman Meacham, should have the use of her entire estate and the full and unlimited enjoyment thereof for and during his lifetime and the only limit to this use and enjoyment is that it should be a life estate only as distinguished from a fee simple, except what he actually used and expended.

Appellant also relies upon certain other authorities, viz, Pennebaker Home for Girls v. Board of Directors,

250 Ky. 44, 61 S. W. (2d) 883; Continental National Bank v. McCampbell, 184 Ky. 658, 213 S. W. 193; Chenault's Guardian v. Metropolitan Life Insurance Company, 245 Ky. 482, 485, 53 S. W. (2d) 720, and perhaps other cases of like and similar nature. But an examination of the instruments involved in those cases, as appears from the opinions, discloses that the powers granted were more specific and restricted than the one in the present case.

In devising the life estate testatrix used the language—"to be his *absolutely* during his lifetime." (Our italics.) Appellees seize upon the word "absolutely" in support of their argument that Rodman Meacham was vested with the fee simple title rather than a life estate. But we do not think that the word "absolutely" is controlling over the plain and simple language "during his lifetime" which quoted words are conclusive that he took only a life estate. It appears to us that the word "absolutely" rather emphasizes or is descriptive of the unlimited use and enjoyment of the life estate. In the Pennebaker Case, supra, the court said [page 884]:

"An examination of authority reveals the general rule to be that a power granted to sell does not include the power to mortgage or otherwise incumber. However, exception has been made to this general rule in many jurisdictions where it has been held that a power to sell authorizes a mortgage if in the circumstances mortgaging will as effectually carry out the intention of the donor and accomplish the purposes for which the power was created. See 21 R. C. L. 780, and 49 C. J. 1271, 1272, and authorities therein cited."

It is disclosed in the record and so argued in brief of counsel that when Rodman Meacham pledged the securities was in the worst part of the depression and the securities were low on market. This would indicate that he was endeavoring to preserve the corpus of testatrix's estate and preferred to borrow money and put the securities in lien to secure the payment of the loan, rather than sacrifice the securities upon a low market. This further indicates a recognition on his part of the rights of the remainderman, Mary L. Morgan, and that he was endeavoring to protect her interest.

Appellant also cites and relies on the case of Rhode Island Hospital Trust Co. v. Commercial National Bank,

542

14 R. I. 625, where there was involved the construction of the will of the wife of Ambrose E. Burnside, which will in all essential parts, particularly the power given by the testatrix to General Burnside, is the same as the one involved in the present case. In discussing **the** question whether General Burnside was empowered to put the securities in lien or mortgage them, the court said:

"The question then is: Is there anything in the will of Mary R. Burnside which shows that it was her intention that the power to sell should include the power to mortgage? Undoubtedly the will evinces a generosity on her part toward her husband, which would have led her to give a power to mortgage, if it had occurred to her to give it; but did it occur to her, and if so, did she suppose that a power to sell included it? We find nothing in the will which enables us to answer the question affirmatively. She speaks only of a power to sell and of 'such sale or sales.' Can we infer a power to mortgage from the character of the property, taken in connection with the language of the will?"

The court then discussed other questions and determined the case upon another theory without definitely determining the precise question whether or not General Burnside had the power to put his wife's securities in lien. It appeared that some of the bonds pledged by General Burnside were not due at the time they were pledged and the court determined and held that if the 18 bonds transferred to the bank had fallen due and been collected and applied by the bank to the payment of General Burnside's indebtedness during his lifetime, the application would have been valid, for it would have been the same in legal effect as if General Burnside had himself collected and so applied them. But the court further held that the application of the bonds to the payment of the note secured by the pledge of the bonds, after the death of General Burnside, was no longer his application, the pledge or mortgage being ineffectual as such for more than his life interest; and immediately after his death the will carried all of the personal estate bequeathed which remained unapplied by him to his use, over to the legatees in remainder.

If we should follow that case it would be conclusive of the case at bar in favor of appellants, in that Rodman

Meacham had no right to pledge the securities in question beyond his lifetime, and upon his death the lien thus created by the pledge came to an end.

We think that opinion is sound and we adhere to the principles enunciated therein, except insofar as it holds that the mortgage ended at the death of the life tenant, and to that extent we are not inclined to follow that opinion. As we have already pointed out, the Rhode Island Court did not pointedly decide the question as to whether or not the power to sell included the power to mortgage, but the court strongly indicated that it was inclined to the view that the power to sell included the power to mortgage. This inference is warranted by the following language in that opinion:

"Undoubtedly the will evinces a generosity on her part toward her husband, which would have led her to give a power to mortgage, if it had occurred to her to give it * * *."

We think the same is true in the present case. The will of the testatrix evinces a generosity on her part toward her husband, Rodman Meacham, which clearly shows that it was not her intention to limit the use he made of the property in his lifetime. To say that the testatrix intended to deny Rodman Meacham the right to mortgage or pledge the property to enable him to borrow money if he so desired, would be inconsistent with the terms of the will as a whole, and particularly the language—"He shall have full power to use and expend any part or all of said estate for any purpose whatever * * *." It appears that the only power withheld was the right to dispose of the property by will.

For reasons stated we are constrained to the conclusion that Rodman Meacham had the right to pledge or put these securities in lien for the purpose he did, and that the duration of such lien was not limited to his lifetime only and that the banks thereby acquired a valid lien upon the securities to secure the payment of their respective notes.

It is next insisted for appellant that even though Rodman Meacham had the right to and did create a lien on the securities to secure the payment of his personal notes, yet, inasmuch as he left individual property of his own sufficient to pay his debts, including the bank notes in question secured by the securities, the banks

should first look to and exhaust, if necessary, the individual property of Rodman Meacham before subjecting the securities in lien.

While this case does not come within the technical rules or usually accepted definitions of marshaling assets, yet, in all essentials, it is closely related to that equitable principle. The rule of marshaling assets is an equitable doctrine worked out and applied when the ends of justice require its application. It is the well settled rule that when a creditor has two liens or funds to which he may look for the satisfaction of his debt, and another creditor has a lien on only one of those funds, then the creditor who has a lien on both of such funds must first look to the fund or source on which the other creditor has no lien or interest therein. This rule is based upon the principle that it would be inequitable and unfair to permit the creditor who has a lien on two funds to first exhaust the one on which his neighbor-creditor has a lien and thereby defeat the collection of the debt of the latter.

True, it is, that the appellee banks have a lien only on the securities but have no lien on Rodman Meacham's individual property, yet the banks have a legal right to collect their debts out of Rodman Meacham's individual property. Nor, has the remainderman, Mary L. Morgan, a lien on either the securities, or the individual property of Rodman Meacham, but she is invested with the legal title to these securities, subject to the lien of the banks, and if the securities are subjected and applied to the payment of Rodman Meacham's personal notes and secured by the liens, then, by the terms of Rodman Meacham's will, all of his individual property, or so much as may be left after payment of his debts, vests in his mother, Elizabeth T. Meacham, and she would thereby indirectly become the beneficiary of the property of the testatrix to the extent of the value of the securities applied to the payment of the notes.

When Rodman Meacham borrowed the money of the banks and executed his personal note therefor, it was primarily his personal obligation, and the pledging of the securities to secure the payment of the loans was merely a guarantee, in addition to his individual property, that the notes would be paid, but not an outright sale of the securities in payment of the notes. Hence, the banks have the right to collect their respective debts

out of the property of Rodman Meacham as well as the pledged securities, but Mary L. Morgan has no right to proceed against the property of Rodman Meacham in satisfaction of her estate in remainder.

It is seen therefore, that the banks have two funds or sources from which they may collect their debts—the property of Rodman Meacham and the securities now owned by Mary L. Morgan (subject to the liens), and if the banks first subject the property of Rodman Meacham to the payment of their debts, no injustice will result to either the remainderman or the banks. But, on the other hand, if the banks elect to first proceed against the securities—the only property in which Mary L. Morgan has an interest, she will suffer loss to the extent of the securities so applied to the payment of the banks' debts.

Conceding, that the usual rules or elements required to invoke the principle of marshaling assets do not appear in this case, yet, in the peculiar circumstances we think it is within the broad power of a court of equity to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it. It is a familiar maxim "he who seeks equity must do equity." Appellee banks have come into a court of equity seeking to subject to the payment of their debts a fund which, if permitted, would do manifest violence to the will of the testatrix and result in an injustice to the remainderman. But on the other hand, if the banks first look to the property of Rodman Meacham in satisfaction of their debts, which they have the right to do, the ultimate intention of the testatrix will be carried out and no one will suffer any injustice. There is no escape from the conclusion that it was the desire and intention of the testatrix that all the assets of her estate not used and consumed by Rodman Meacham in his life time should go to her kin as provided in clause five of the will.

It is our conclusion therefore, that in order to prevent the intention of the testatrix being thwarted, and a manifest injustice done to the remainderman, equity and good conscience demand that appellee banks first subject the individual property of Rodman Meacham to the payment of their respective debts, and if it be insufficient to satisfy them in full, in that event, they may subject the pledged securities or a sufficient amount thereof to payment of the balance.

It appears that at the time of the death of the testatrix she held certain notes aggregating $15,000, which the Southern Mineral Company had executed as a part of the purchase price for certain lands, and also certain other notes amounting to $12,000, referred to in the record as H. H. Mallory notes, which were also vendor's lien notes. She also held notes against Rodman Meacham, her husband, aggregating $20,589.52. All of these notes were unpaid and were delivered by the executors to Rodman Meacham, all of which he cancelled or otherwise destroyed. The chancellor held that Rodman Meacham had the right to mark paid, cancel, destroy or otherwise dispose of these notes as he pleased, and that the remainderman could not complain.

It is claimed by appellees that certain of these notes, particularly the land notes, had served their purpose and were not legally binding obligations. The evidence on this issue is meager and, since the case must be returned for further proceedings and adjudication, we reserve this question. Upon a return of the case all parties may, if they desire, further develop this issue by amended pleadings, evidence or otherwise. We may say, however, that if it develops that any part or all of these notes have served their purpose and no longer legally binding obligations, the estate of Rodman Meacham should not be held to account for them. But as to Rodman Meacham's individual notes, we think that under the broad power of use of the property, he had the right to cancel such notes, or otherwise dispose of them. in any manner he saw fit.

It also appears that among the securities pledged to the Planters Bank & Trust Company by Rodman Meacham to secure his note to it, there were 21 shares of Electric Bond and Share Company, and 25 shares of Bethlehem Steel Corporation, all of which are still held by the Planters Bank & Trust Company. It appears that during the preparation of the pleadings in the case all parties were of the opinion that these particular securities had been received by Rodman Meacham from testatrix' estate. However, when the proof was taken it developed, so far as the meager amount of evidence tends to show, that the above named securities were the property of Rodman Meacham and never were a part of testatrix's estate. Thus, we have a conflict between the pleadings and the proof. Appellees filed no amended pleading to conform to this proof and it is argued for

appellant that the court erred in adjudging that these particular items of security are not a part of the assets of the estate of testatrix, but the individual property of Rodman Meacham, and relies on appellees' pleadings in which they pleaded that among the securities pledged to the bank by Rodman Meacham were these particular items. Appellees contend that the pleadings in the record, as a whole, put the ownership of these certificates in issue, since Elizabeth T. Meacham's pleadings raised the question, which action was consolidated with the other actions. However, Elizabeth T. Meacham's rights were determined upon the sole question of whether Rodman Meacham was the absolute owner or vested with the fee to all of the property of testatrix, but the ownership of no particular item of security was determined. It is doubtful that the pleadings are sufficient to support the judgment of the chancellor as to the ownership of these particular securities. But since the evidence indicates that they were the individual property of Rodman Meacham, we do not think we should now determine that question. Upon a return of the case each party should be permitted, if they desire, to file amended pleadings, take further proof and more fully develop this issue to the end that justice may be done.

The chancellor further held and adjudged that the First-City Bank & Trust Company recover of the executors of the estate of testatrix the sum of $2,308.44, overdraft for the purpose of paying annuity to Lucy Whitlock, taxes, insurance premiums, etc. This item is not discussed or complained of in brief of appellant and the overdraft having been brought about by the payment of the items set out in the court's judgment, we think it is proper and the judgment is affirmed on that item.

It also appears that the court allowed a claim of $100 in favor of the United States Fidelity & Guaranty Company as against the estate of testatrix as a balance due on the premium for bond executed by it to James Breathitt, Jr., as executor of testatrix. We think this is a proper charge against the estate and the judgment is affirmed on that item.

The chancellor also reviewed the settlement which had been filed in and approved by the Christian county court made by the First National Bank and James Breathitt, Jr., executors, of their accounts. The chan-

cellor sustained exceptions to certain items of the settlement and disallowed same and approved of and allowed certain other items. Since there is no error pointed out in brief of appellant with respect to the chancellor's judgment on this item, the judgment is affirmed as to it.

The court adjudged that there be allowed to the First National Bank, E. L. Weathers, its liquidating agent, and James Breathitt, Jr., for their services as executors of the estate of testatrix, the sum of $3,525.15 commission on the money collected and disbursed by them, and the further sum of $750 for handling securities which came into their hands and for extraordinary services performed by them in the management of the estate, but refused to allow the claim of White & Clark for services to the estate of testatrix, and adjudged that out of the sum allowed the executors they, executors, shall pay for the legal services rendered to them or either of them by their attorneys, White & Clark. White & Clark and the executors complain of the judgment on this item, from which they have prosecuted cross-appeal, and insist that the court should have allowed the attorneys, White & Clark, $2,000 for their services in addition to the sums allowed the executors for their services. However, since the case must be remanded for further proceedings and adjudication, which will likely entail more work and services and duties to be performed by the executors and the attorneys, we do not think that we should determine this question by piecemeal. We may say, however, that we are somewhat inclined to the view that the sum allowed the executors out of which the court adjudged they must pay their attorneys is somewhat meager. Upon final adjudication of the case the court should allow the executors and attorneys reasonable commission and fees commensurate with the work and duties performed by them.

The court refused to allow S. Y. Trimble any fee as against the estate of Rodman Meacham for his services performed in the settlement of that case. It is argued for appellees that the court properly refused to allow Mr. Trimble a fee for his services in that case because the suit was unnecessary, since other suits were pending which serve the same purpose. Upon examination of the record on this item we are constrained to the view that that action was necessary in order that both estates be completely settled at the same time. Pursuant to that

action an order was made referring the case to the master commissioner to advertise for claims and report same. It seems that the commissioner delayed making his report for a considerable time and finally upon motion for rule against him to show cause why he had not complied with the order of the court, the commissioner advertised for claims and filed his report. After the report was filed Mr. Trimble filed lengthy exceptions to various claims that were filed, and contained in the report. It appears that a number of these claims were improper some of them being duplications. Up to this time the administrators had filed no exceptions to the claims and very probably the report would have been confirmed but for the exceptions filed by Mr. Trimble. However, the administrators finally joined with Mr. Trimble, in the exceptions.

Furthermore, in the entangled condition of the two estates, Rodman Meacham's and Louise Jones Meacham's, the rights of the creditors of Rodman Meacham's estate and also the rights of the remainderman could hardly be finally determined without a complete settlement of both estates.

For reasons stated it appears to us that Mr. Trimble is entitled to a reasonable fee for his services performed in connection with the settlement of Rodman Meacham's estate, and once the case is finally disposed of in the lower court, the court will allow Mr. Trimble a reasonable fee for his services rendered in that action.

It is also insisted that James Breathitt, Jr., should not be allowed any sum against the estate of testatrix for his services as an attorney and that he was not entitled to any compensation except commission as an executor. To sustain this position numerous foreign cases are cited and also the Kentucky case of Sluscher v. Weller, 151 Ky. 203, 151 S. W. 684. In that case Weller qualified as the administrator of the estate of Robert Pearce who was killed in a railroad tunnel. It appears that Weller accepted the appointment as administrator at the solicitation of the distributees of the estate of his decedent and at the time he agreed that he would charge only $10 or $15 for making the bond. After he qualified as administrator he settled the claim with the railroad company and charged the estate $300 for his services as attorney in the matter before he qualified as administrator. In an action to surcharge the settlement, the cir-

cuit court allowed the $300 charge as attorney fee, and on appeal to this court it was held that after Weller qualified as administrator he could not charge for services which he rendered as attorney for himself.

We do not think, however, that the Weller case, supra, is applicable to the facts and circumstances of this case. Had Louise Jones Meacham (testatrix) died intestate, and Mr. Breathitt had been appointed administrator of her estate, a different question might have been presented.

It must not be overlooked that testatrix nominated or appointed Mr. Breathitt to serve her estate in two separate capacities, viz., executor and also attorney. Testatrix knew the nature and condition of her estate and no doubt anticipated or expected that legal services would be required in the handling and settling of the estate. In the circumstances, it is not reasonable to presume that testatrix intended that the only compensation that Mr. Breathitt would receive for his services as executor and attorney for the estate would be limited to his share of the commission fixed by the statute which might be allowed to him and his co-executor, First National Bank of Hopkinsville, and that he would receive no compensation for his legal services rendered in the interest of the estate. We think these circumstances and facts refute the idea or inference that when testatrix designated Mr. Breathitt attorney for her estate, in addition to executor, she did not intend or expect him to receive any compensation as attorney. It is our view, therefore, that Mr. Breathitt was entitled to reasonable compensation for legal services rendered in behalf of the estate, in addition to his commission as an executor.

Wherefore, the judgment on the original appeal is affirmed on the items we have indicated, and reversed on the items we have indicated, and remanded on other items so indicated. The cross-appeal of the executors for commissions, and the cross-appeal of White & Clark for attorneys' fees, is reversed and remanded as we have indicated, and reversed on the cross-appeal of S. Y. Trimble.

The whole court sitting.

Judges Thomas and Ratliff dissent from that part of the opinion holding the life tenant, Rodman Meacham, had the right to extinguish his indebtedness to his wife,

the testatrix, by payment or otnerwise so as to destroy it as an asset of her estate for the benefit of the residuary remaindermen. He only had a life interest in her estate with the power of disposition but not with the power of extinguishment or final termination of any particular asset thereof.