**UPS CAPITAL BUSINESS CREDIT, Appellant,**

**v.**

**C.R. CABLE CONSTRUCTION, INC.; Patton Management Corp. (f/k/a Wright & Lopez, Inc.); Patton Management Group, Inc. (d/b/a Wright & Lopez); T.D.A. Properties, Inc. (d/b/a Aulbach Auctioneers); Alltel Communications Products, Inc., Appellees.**

No. 2004–CA–002062–MR.

Court of Appeals of Kentucky.

Dec. 9, 2005.

Craig C. Dilger, W. Duncan Crosby III, Ogden, Newell & Welch, PLLC, John T. McGarvey, Morgan & Pottinger, PSC, Louisville, KY, for appellant.

Dan M. Rose, R. Eberley Davis, Lizbeth Ann Tully, Stoll, Keenon & Park, LLP, Lexington, KY, for appellee C.R. Cable Construction, Inc.

Kevin G. Henry, Sturgill, Turner, Barker, & Moloney, PLLC, Lexington, KY, for appellee C.R. Cable Construction, Inc.

1. Senior Judge Lewis G. Paisley sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute 21.580.

Before DYCHE and GUIDUGLI, Judges; PAISLEY, Senior Judge.[1]

## OPINION

DYCHE, Judge.

UPS Capital Business Credit (UPS Capital), appeals from a July 15, 2004, order of the Clark Circuit Court invoking the equitable doctrine of marshaling assets, thereby requiring UPS Capital to seek satisfaction of a debt on two notes owed by Patton Management Group, Inc. (d/b/a Wright Lopez) and Patton Management Corp. (f/k/a Wright Lopez, Inc.) (collectively Patton Management) through alternative sources, including loan guaranties and other secured assets, prior to exercising its first-priority security lien against garnished cash accounts currently being held by the circuit court. The invocation of the doctrine facilitates the efforts of C.R. Cable Construction, Inc. (C.R. Cable) to obtain satisfaction of its judgment against Patton Management for breach of contract from the garnished funds.

For the reasons stated below, we reverse the circuit court's July 15, 2004, order insofar as it requires UPS Capital to marshal assets as against the guarantors of the Patton Management notes; we affirm the order in all other respects.

On January 24, 2003, Patton Management executed two notes in favor of UPS Capital's predecessor, First International Bank (First International).[2] The first note was for $750,000.00, and was secured by a Security Agreement granting First International a security interest in all of the property owned by Patton Management or thereafter acquired. The second note was

2. At some point subsequent to the execution of the notes, First International changed its corporate identity to UPS Capital, and UPS Capital became the creditor under the notes.

for $500,000.00 and was executed in conjunction with a Small Business Administration (SBA) loan. While not as broad as the security interest associated with the first note, this loan likewise included a security interest in property owned by Patton Management. The security agreements were perfected by the filing of financing statements with the Delaware Secretary of State.

Each of the notes was also secured by separate security guaranties executed by Patton Management officers Bill Ray, Richard Boyle and Alec McLarty, and by Patton Management shareholder, Linkcom, Inc. These loan guaranties, and whether the guaranties are subject to the doctrine of marshaling assets, are at the center of the present litigation.

In the meantime, Patton Management became indebted to C.R. Cable for work performed by C.R. Cable as a subcontractor on a contract between Patton Management and South Central Bell telephone company for, among other things, the installation of underground cable.

Soon after the January 24, 2003, notes were executed, Patton Management began experiencing financial difficulties and undertook the process of self-liquidation. This liquidation of assets constituted default under the two loan security agreements. During this time Patton Management also defaulted on its payment obligations to C.R. Cable under their contractual agreement.

On March 28, 2003, C.R. Cable filed a lawsuit in Clark Circuit Court seeking to recover from Patton Management amounts owing under the contract. On May 1, 2003, Clark Circuit Court entered a default judgment in favor of C.R. Cable entitling it to collect from Patton Management the sum of $368,116.17 plus interest, attorney fees, and costs.

In seeking to enforce its judgment, C.R. Cable obtained Orders of Garnishment against T.D.A. Properties, Inc., d/b/a Aulbach Auctioneers, and Verizon/Alltel Communications, Inc., for amounts these entities owed to Patton Management. These parties deposited with the circuit court, respectively, $429,711.28 and $33,936.35. C.R. Cable also obtained an Order of Garnishment against BellSouth Telecommunications, Inc., in the amount of $277,995.95; those garnished funds, however, were deposited with the Jefferson Circuit Court in association with separate litigation involving Patton Management and are not at issue in this proceeding.

On June 11, 2003, UPS Capital moved to intervene in the Clark Circuit Court action and asserted a claim to the garnished funds under its first-priority security interest. UPS Capital sought to quash the garnishments and apply the garnished funds toward satisfaction of its two secured notes. According to the appellant, as of June 2, 2003, Patton Management owed UPS Capital $309,502.71 on the first note and $398,386.20 on the SBA note. By docket sheet order entered July 4, 2003, UPS Capital was granted leave to intervene in the action.

On February 19, 2004, C.R. Cable filed a motion requesting that the circuit court invoke the doctrine of marshaling assets and order UPS Capital to first seek repayment on the two notes from other collateral securing the notes, as well as the four personal guarantors, prior to seeking payment on the notes from the garnished funds. As grounds for the motion C.R. Cable noted the abundance of other collateral from which UPS Capital could seek satisfaction of its notes; that the personal guaranties were a source of satisfaction available only to UPS Capital; and that UPS Capital had failed to exercise diligence in trying to collect its debt, resulting

in a depletion of assets by Patton Management.

By order entered on July 15, 2004, the circuit court granted C.R. Cable's motion to invoke the doctrine of marshaling assets and directed UPS Capital to "proceed forthwith to collect its debt from Patton by enforcement of the guaranties and liquidation of any other collateral it holds securing its loans." The circuit court further directed that "the Garnished Funds presently being held by this Court pursuant to previous orders of this Court shall remain so until further order of this Court." This appeal followed.

We first address C.R. Cable's argument that the circuit court's July 15, 2004, is an interlocutory and nonappealable order.

Ky. R. Civ. Pro. (CR) 54.01 defines a final and appealable judgment as "a final order adjudicating all the rights of all the parties in an action or proceeding, or a judgment made final under Rule 54.02." However, CR 54.02(1) provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may grant a final judgment upon one or more but less than all of the claims or parties only upon a determination that there is no just reason for delay. The judgment shall recite such determination and shall recite that the judgment is final. In the absence of such recital, any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is interlocutory and subject to

revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

■ The circuit court's July 15, 2004, order contained the finality language required by CR 54.02. Moreover, the trial court has broad discretion in making a determination of whether an order is final and appealable under CR 54.02. *Christie v. First American Bank,* 908 S.W.2d 679, 681 (Ky.App.1995); *Jackson v. Metcalf,* 404 S.W.2d 793 (Ky.1966).

■ We construe the circuit court's July 15, 2004, order as having resolved one among the multiple claims pending in the lawsuit; namely, whether UPS Capital, over its objection, should be required to undertake the time, effort, and expenses associated with implementing the circuit court's order to commence marshaling assets against other secured Patton Management collateral and against the four guarantors prior to exercising its lien against the garnished funds. While things remain to be done in the circuit court litigation, we cannot conclude that the circuit court abused its discretion in determining that there was no just reason for delay under CR 54.02.

Turning now to the merits of the appeal, UPS Capital contends that, for various reasons, the circuit court erred in invoking the doctrine of marshaling assets with respect to the loan guaranties executed by Bill Ray, Richard Boyle, Alec McLarty and Linkcom, Inc.[3] We agree.

■ The doctrine of marshaling assets is an ancient rule of equity. The doctrine requires that "where two or more creditors seek satisfaction out of the assets of their common debtor, and one of them can resort to two funds where another has re-

---

**3.** UPS Capital does not appear to challenge invocation of the marshaling assets doctrine with respect to other available Patton Management collateral.

course to only one of the funds, the former creditor may be required to seek satisfaction out of the funds which the latter creditor cannot reach, before resorting to the other fund." *Bartley v. Pikeville Nat. Bank & Trust Co.*, 532 S.W.2d 446, 448 (Ky.1975). By this method of distribution both creditors may be paid or both funds will be exhausted. *Id.*

■ However, "it is well settled that a creditor who has a claim against two debtors, one a principal and the other a surety, cannot be compelled by another creditor of the principal debtor to exhaust his remedy against the surety before proceeding against the principal." *Gaines v. Hill*, 147 Ky. 445, 144 S.W. 92, 94 (1912) (citations omitted). The rationale for this rule has been explained as follows:

> A surety is not a "fund" or "security" in the sense in which those terms are used in connection with the principle of marshaling so as to permit or require a senior creditor to look first to the surety for satisfaction of its claim. Where a fund is held by a surety or guarantor, marshaling is barred because the debtor does not hold the funds which are in the hands of the surety or guarantor and, therefore, are not assets subject to marshaling. Thus, in the absence of some special equity, the principle of marshaling assets is not applicable to a case where one of the funds is the property of a surety of the common debtor. As a result, a creditor cannot be compelled to satisfy its debt from the sureties of a debtor before resorting to a fund or collateral security on which the creditor has a lien.

53 AM. JUR. 2D *Marshaling Assets* § 28 (1996).

■ The circuit court's July 15, 2004, order, insofar as it includes the four guarantors of the Patton Management loans (Ray, Boyle, McLarty, and Linkcom, Inc.)

as subject to the doctrine of marshaling assets, is not in compliance with the rule as stated in *Gaines v. Hill.* We accordingly reverse that facet of the order. We affirm the circuit court's July 15, 2004, order, however, with respect to marshaling as concerns other Patton Management collateral covered under the security agreements.

In support of including the guarantors as subject to the doctrine of marshaling assets, C.R. Cable cites us to *In the Matter of Clary House, Inc.*, 11 B.R. 462 (W.D.Mo.1981), and *Morgan v. Meacham*, 279 Ky. 526, 130 S.W.2d 992 (1938). *Clary House* is an anomaly which has not been followed by any other court and is at odds with the rule as stated in *Gaines;* further, we do not believe that *Morgan* is inconsistent with the rule as stated in *Gaines.* In any event, *Gaines* has not been overruled, and has been applied as recently as 1975 in *Bartley v. Pikeville National Bank & Trust Company, supra.* In summary, we believe that the rule as stated in *Gaines v. Hill* remains the law in this Commonwealth. Hence, we are bound to apply the rule as stated therein. Rules of the Supreme Court 1.030(8)(a).

For the foregoing reasons we affirm in part, reverse in part, and remand for additional proceedings consistent with this opinion.

ALL CONCUR.