## W. H. KENDIG ET AL. v. JOHN S. LANDIS.

APPEAL BY J. B. ESBENSHADE, TR., FROM THE COURT OF COMMON PLEAS OF LANCASTER COUNTY.

Argued May 21, 1890—Decided June 2, 1890.
[To be reported.]

1. When one creditor has two funds out of which to make his money, and another creditor has but one, the former must first exhaust the fund upon which the latter has no claim, unless, in the particular instance, some equity renders the application of the rule unjust.
2. A judgment, which was a lien upon two properties sold on separate executions, cannot be paid out of the proceeds of the second sale, to the prejudice of a subsequent mechanics' lien, if the proceeds of the first sale in the hands of the sheriff are sufficient to pay said judgment.
3. The fact that the holder of such judgment has another one, subsequent in date to the mechanics' lien, which subsequent judgment will not be reached by either fund unless the prior judgment is paid out of that raised by the second sale, presents no equity to take the case out of the usual rule.
4. It may be a question, as intimated in Knouf's App., 91 Pa. 78, whether a mechanics' lien claimant can be subrogated to the rights of a prior judgment creditor as to another property than that against which his lien is filed; but, whether such right does exist, not decided, the question not arising.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and McCOLLUM, JJ.

No. 305 January Term 1890, Sup. Ct.; court below, No. 26 August Term 1888, E. D., C. P.

On March 27, 1889, the court below appointed *Mr. W. F. Beyer* auditor to distribute the sum of $3,117.44, paid into court as the proceeds of a sheriff's sale of certain real estate in Lancaster township, sold as the property of John S. Landis at

Auditor's Report.

the suit of W. H. Kendig and W. H. Lauman, trading as Kendig & Lauman.

The facts as found by the auditor were in substance as follows: Prior to March, 1884, John S. Landis was the owner of a farm in Manor township, which was subject to liens aggregating over $3,000. On March 31, 1884, he acquired title to a property in Lancaster township, near Millersville. On April 7, 1884, Jacob Esbenshade obtained a judgment against Landis for $2,500, which became a lien on each of said properties, being the first lien on that in Lancaster township. Between April 7 and May 15, 1884, Landis commenced the erection of a dwelling and a stable upon his Millersville property. Afterward, judgments were recovered against him as follows:

| I. H. Kauffman, May 15, 1884, | . | . | . | $1,500 |
| Jacob Esbenshade, October 1, 1884, | . | . | . | 500 |
| C. M. Rutt, for use, April 13, 1885, | . | . | | 850 |

At various dates, mechanics' liens for work done and materials furnished in and about the construction of the buildings upon the Millersville property, were filed by fifteen different persons, amounting in the aggregate, with interest, to $7,023.88. These claims were all filed subsequent to the entry of the second judgment in favor of Esbenshade, and about one half the materials embraced in them were furnished before, and about one half after, said judgment was entered. The Esbenshade judgments, on the death of the plaintiff therein, became vested in Jacob B. Esbenshade, trustee.

On April 21, 1888, the sheriff sold the Manor township farm. The fund produced by that sale was disbursed in part, the liens prior to the first judgment of Esbenshade being paid off in full, and the sum of $1,900 being paid to Esbenshade on account. Of that fund, there remained in the hands of the sheriff $2,337.77. The Millersville property, the proceeds of which constituted the fund before the auditor, was sold by the sheriff on June 3, 1888, and the net proceeds for distribution were $3,117.44.

Upon these facts, the auditor reported his opinion relative to the question raised upon this appeal, as follows:

From the foregoing facts several questions arise, viz.: 1. Can

the fact that the funds were produced by separate sales, and that the auditor is distributing only one of them, prevent marshaling of assets? . . . .

1. Records and testimony were offered in evidence, showing a sale of the property of John S. Landis in Manor township, and what has been done with the proceeds. Objections were made to the admission of this evidence. Can the fact that the Manor township property was sold by the sheriff some months previous to his sale of the Lancaster township [Millersville] house, and that the auditor is distributing only the fund derived from the latter, render this testimony irrelevant and inadmissible? The subject of the marshaling of assets properly refers to the adjusting of conflicting claims upon a common fund, but the doctrine of subrogation nevertheless applies to different funds raised at different times, or even in different counties. The broader lien creditor must either have recourse to the fund charged with his lien alone, or he must allow the restricted lien creditor the use of his lien to obtain satisfaction out of the fund he could not otherwise reach: 2 Trickett on Liens, § 804. In Delaware etc. Canal Co.'s App., 38 Pa. 512, there were three separate sales of different tracts, yet it was held that the holder of a mortgage, which was a lien on part only of these tracts, was entitled to be subrogated to the judgments which were first liens on all the tracts, and which were paid from the sale of a portion of the mortgaged premises eighteen months before: See, also, Hastings' Case, 10 W. 303.

In the present case, the judgment of Jacob Esbenshade, trustee, for $2,500, is a first lien on the fund raised from this house; it is also in such a position, as a lien on the moneys in the hands of the sheriff. derived from the sale of the Manor township property, that it is entitled to be paid in full from that fund. Holders of mechanics' liens on the house claim that Esbenshade must take this judgment from the Manor township fund and leave the proceeds of the house for them. But Jacob Esbenshade, trustee, is also the holder of another judgment against John S. Landis, for $500 and interest, entered October 1, 1884, the lien of which on the house is subsequent to that of the mechanics' liens, which is not reached by the proceeds of the farm; and he claims the right to pay his $2,500 judgment, or the balance due on it, from the house, in order that his $500

judgment may drop down and be paid from the other fund. He denies that there is any equity that will compel him to re- linquish the lien that his $2,500 judgment undoubtedly has on the house, to his own prejudice.

The fact that Jacob Esbenshade owns two judgments does not in our opinion alter the situation or in any manner affect the equities of the case. Distribution is made according to the priority of the liens, without reference to who holds them. The same distribution must be made now that would have been made had they been owned by different parties.

The doctrine of subrogation is tersely set forth by STRONG, J., in Delaware etc. Canal Co.'s App., 38 Pa. 516, where he says : " This is an equity against the debtor himself, that the acci- dental resort of the paramount creditor to the fund doubly encumbered, shall not enable him to get back the other fund discharged of both debts. And, being an equity against the debtor, it is of course equally such against his subsequent judgment creditors, who have no greater rights than their debtor had at the time their judgments were entered." In the same case, p. 517, we find : " The mistake in the court below was in conceiving that the judgment creditors subsequent to the mortgage have rights superior to those of their debtor. . . . . . They are affected by all the equities which existed against him when they obtained their judgments."

The equities upon which subrogation depends must be de- termined by the situation at the time the liens applying for the same were entered. The auditor is therefore of the opinion that as the lien of the judgment of Jacob Esbenshade, trustee, is subsequent to that of the mechanics' liens, it cannot be con- sidered in adjusting the equities between his other judgment for $2,500 and the said mechanics' liens. Taking this view, the auditor decides that Jacob Esbenshade, trustee, must look to the fund derived from the sale of the Manor township property and now in the hands of the sheriff, for the payment of his judgment of $2,500.

It would perhaps be more correct to award his payment of the balance out of this fund and leave the mechanics' lien creditors to seek subrogation against the other fund ; but the course we have adopted will reach the same result in the end and avoid circuity of action.

### Arguments.

—The auditor accordingly reported a schedule of distribution appropriating the net proceeds of the Millersville property to the mechanics' liens filed against the same, pro rata. Exceptions to his report, after argument, were dismissed by the court, LIVINGSTON, P. J., in an opinion and decree as follows:

"In this case we have examined the testimony produced before and passed upon by the learned auditor, especially with reference to the liens and their priority, with the law cited on the argument, and do not find that the learned auditor, in his well considered and able report, has violated any principle of equity or law; neither are we satisfied that he has erred in regard to the matters complained of by the exceptions. The exceptions are therefore dismissed, and the report of the auditor confirmed absolutely."

Thereupon Mr. Esbenshade, trustee, took this appeal, specifying that the court erred:

6. In confirming the report of the auditor and decreeing distribution in accordance therewith.

*Mr. A. F. Hostetter*, for the appellant:

1. This appeal gives the Supreme Court jurisdiction to inquire into the whole matter and distribute the fund according to law: Boal's App., 2 R. 38. The balance of the fund from the Manor township property remaining in the sheriff's hands, though not before the auditor for distribution, has been considered by him as though it were. It is proper to say that we have received $1,900 out of that fund, but we did so on an understanding with the sheriff that it should be applied in accordance with the final determination of the equities of the parties, and hence the case will be argued as though nothing had been paid. Our judgment entered April 7, 1884, is now the first lien on each fund, but it makes a very material difference out of which one it is paid, for if we do not get at least $594.20 out of the proceeds of the Lancaster township property, our second judgment will be lost.

2. We claim the right to take payment out of the fund before the auditor, and thus secure the advantage of our first lien in the way least prejudicial to ourselves. This right we clearly have unless other equities, stronger than ours, inter-

vene: Ramsey's App., 2 W. 232. We were ruled out by the auditor and the court, upon the ground that if our first judgment were paid out of this fund the mechanics' liens could be subrogated upon the Manor fund. We contend that mechanics' liens are not such liens as are entitled to subrogation. This has been strongly intimated by this court: Knouf's App., 91 Pa. 78; and no case will be found in which subrogation has been enforced in favor of such liens. On principle, it seems clear that they are not entitled to it. They are purely in rem. They create no personal liability: Anshutz v. McClelland, 5 W. 487; Holden v. Winslow, 19 Pa. 449; and are not in the nature of a judgment: Knabb's App., 10 Pa. 192.

3. Judgments or mortgages differ radically from mechanics' liens. In the former, there is either an adjudication or a confession of personal liability which pledges the debtor's whole estate and creates an equity against him that prevents the accidental resort of the paramount creditor to the fund doubly charged, from operating to enable the debtor to get back the other fund discharged from both debts. In the case of mechanics' liens, no personal liability having been fixed on the debtor, the very reason for the doctrine of subrogation is wanting. To enforce it as to them would be to enlarge a purely statutory lien against a particular building and its curtilage, into a general lien of the broadest kind against all the defendant's lands, wheresoever situated; and this, in the face of the rule that statutory privileges are strictly construed.

4. In any event, these mechanics' liens, none of which were on record for months after our second judgment was entered, cannot be subrogated on the Manor fund as against that judgment. To allow this would be enforcing subrogation in favor of secret liens against liens of record. Mechanics' claims are an exception to the settled policy against secret liens, so far as the particular building is concerned; but, to allow them to relate back in a claim for subrogation, which may be enforced against funds in another county, and in some cases even in another state, would produce untold confusion and reverse the whole doctrine of notice. Moreover, the doctrine of subrogation is purely of benevolence, and it will never be enforced when it would work injustice, nor except in favor of the stronger equity: Keely v. Cassidy, 93 Pa. 318; Wagner v.

Elliott, 95 Pa. 487. The mechanics' lien creditors had record notice of our first judgment before work was begun on the Millersville property, but we had no record notice of their liens, and were not bound to know of their contingent claim for subrogation, when we parted with the money on our second judgment on the security of the Manor property. Our equity is therefore stronger than theirs.

*Mr. P. D. Baker*, for the appellees:

The holders of mechanics' liens have but the one fund to resort to. They are not claiming any rights of substitution or subrogation, but are simply resisting the attempt of Esbenshade to take their fund, and endeavoring to confine him to his own fund arising from the farm, which is more than ample to pay him. To allow him to have his way of distributing the funds would be to prefer a subsequent lien at the expense of a prior one.

OPINION, MR. CHIEF JUSTICE PAXSON:

The appellant has two funds out of which to claim his money. One of the funds is the proceeds of the sale of the Manor township farm, which was sold by the sheriff for a sum sufficient to pay appellant's judgment in full. The money is in the hands of the sheriff, but the appellant declines to take it out. The other fund is the proceeds of the sale of the Millersville property. This property was sold by the sheriff subsequently to the sale of the Manor farm. The mechanics' lien creditors have a claim upon this fund, but they are subsequent to the lien of the plaintiff's judgment. The appellant insists upon his right to take his money out of the latter fund. If he succeeds, he takes the only fund the mechanics' lien creditors have.

The application of the familiar rule that where one creditor has two funds out of which to make his money, and another creditor has but one, the creditor having the two shall first exhaust the fund upon which the other has no claim, would throw the appellant upon the Manor farm. This rule must prevail, unless the appellant has an equity which would make the application of the principle unjust in the particular instance. The reason why he objects to it is that he is the holder of a second

judgment, which is also a lien upon the two properties, but as to the Millersville property it is subsequent to the mechanics' claims.   Hence he desires to first absorb the Millersville fund, in which case his second judgment is good upon the Manor farm.   In this, however, he has no equity.   When the mechanics put their work and materials upon the Millersville property, they could see of course that it was bound by the lien of appellant's first judgment.   But they also knew that the same judgment was a lien on the Manor farm, and that said farm was amply sufficient to pay it.   With this knowledge, they had a right to expect that the appellant would seek to get his money out of the farm, and not deprive them of the security of their liens.   They further knew that they could compel him to do so if necessary.   Is this right to be taken away because the appellant acquired another judgment which was also a lien upon both properties, and which was entered after the mechanics' liens had attached to the Millersville property ?   The appellant has no equity as to his second judgment, for the reason that it is subsequent to the mechanics' liens, and he cannot, by tacking his two judgments together, deprive the mechanics of their equity to have the first judgment satisfied out of the Manor farm.

It may be a question, as was intimated in Knouf's App., 91 Pa. 78, whether the mechanic's lien claimants are entitled to the right of subrogation.   It is not necessary to decide it in this case, as the point does not arise.   But we think there can be no doubt as to their right to throw the appellant upon the proceeds of the sale of the Manor farm.   The money arising from the sale thereof has been made; it is in the hands of the sheriff, awaiting his acceptance, and is sufficient to pay his judgment.   We cannot compel him to accept it, but we can and ought to prevent his coming in upon the Millersville property, and sweeping away the fund from the mechanics' lien creditors, who have no other fund to resort to.

The decree is affirmed, and the appeal dismissed, at the costs of the appellants.