THE BANK OF COMMERCE OF EVANSVILLE, INDIANA, *v.* THE FIRST NATIONAL BANK OF EVANSVILLE, INDIANA, ET AL.

[No. 18,455. Filed May 24, 1898.]

MORTGAGES. — *Judgment Liens.* — *Priority.* — *Marshaling Assets.* — Where a creditor takes a mortgage on land, it then being apparent that certain prior judgment liens can be fully paid from other land covered by such liens, the right to require such payment will continue and be protected as against such judgment liens.

From the Vanderburgh Superior Court. *Affirmed.*

*Alexander Gilchrist* and *Curran A. De Bruler*, for appellant.

*T. E. Garvin*, *G. A. Cunningham* and *T. E. Garvin*, *Jr.*, for appellees.

HACKNEY, C. J.—David J. Mackey owned several parcels of real estate, estimated to be of the value of $200,000.00, upon which were certain judgment liens of about $13,000 in favor of parties not here interested. Mackey gave to the First National Bank, appellee, a mortgage on parts of said real estate, referred to, for convenience, as No. 1, for about $100,000. Thereafter he executed to one Cook, as trustee, a conveyance of the remaining parts of said real estate, which we will refer to as No. 2, the purpose of the trust being the sale of parcels included in No. 2, and the application of the proceeds to certain claims for a large sum owing to the Bank of Commerce, appellant. Still later the Bank of Commerce purchased the judgments mentioned. The trustee sold a large part of No. 2 and applied the proceeds to the claims of the appellant, other than said judgments. In a foreclosure proceeding instituted by the appellee, First National Bank, the question was made as to the rights of said appellee to require said judgments, so held by said appellant, to be made first from the property No. 2. The lower court held that they should be so enforced, and this appeal is from that holding.

The learned counsel for the appellant makes this concession: "Of course the general doctrine that where a creditor has access to two funds for the payment of his debts, and another creditor is confined to one of those funds, the dominant creditor will be compelled in the first instance to exhaust the fund upon which the other creditor has no security before resorting to the latter, is conceded." It is practically con-

ceded, also, that, in the hands of the original judgment creditors, equity might have enforced the lien of the judgments, for the appellee's protection, against No. 2 alone.

In Bispham's Principles of Equity, section 27, it is said: "The doctrine of marshaling grows out of the principle that a party having two funds to satisfy his demand shall not, by his election, disappoint a party who only has one fund. Thus, a party who has a mortgage on two parcels of land, ought not, in fairness, to resort in the first instance to one of them, upon which there also happens to be a junior mortgage which is not otherwise secured; for in so doing the junior mortgagee· might be altogether cut out. Equity, however, is loath to interfere with the rights of a creditor to enforce payment out of any of his securities, and therefore the remedy usually afforded to the junior disappointed mortgagee is to substitute him to the rights of the paramount mortgagee as against the other property." The same proposition is announced and illustrated by the author in section 340, *et seq.*, of the same work. In section 341 it is said that "the equity of marshaling would seem to be capable of being carried into effect in one of two ways, either, first by restraining the party against whom it exists from using a security to the injury of another, or, second, by giving the party entitled to the protection of this equity the benefit of another security in lieu of the one of which he has been disappointed. In other words, the right might be enforced either by injunction against the paramount creditor, or by subrogation in favor of the junior creditor." In the same section it is further said: "The rights of every·one can be protected, and there is no harm in throwing the paramount creditor at once on the singly charged fund. So, too, when the paramount creditor

has been guilty of some negligence or default, as where he has put one of the funds beyond his own reach with the full knowledge that his debt cannot be satisfied out of the other fund without injury to the interests of third persons, he may be restrained from coming in upon the second fund."

In Fetter on Equity, p. 256, it is said "that a person having resort to two funds shall not by his choice disappoint another having one only. The practice adopted in the early days was to summarily forbid the creditor with two funds to touch that which was the sole resource of the other. The remedy by injunction is, however, rarely applied in modern times. The usual course is to permit the double creditor to enforce his claim as he pleases; but, if he chooses to resort to the only fund on which the other has a claim, that other is subrogated to all his rights against the fund to which otherwise he could not have resorted."

In Jones on Liens, sections 1045, the same rules are stated, and wherever stated, are fortified by abundant authority.

One contention on behalf of the appellant is, that while the right to require enforcement of the judgment against No. 2 alone existed at all times, prior to the execution of the trust deed, after that time it did not exist; that the right was not fixed, but was inchoate and to be enforced only with reference to conditions existing at the time of enforcement. If this were true, the rule that subrogation was the more modern and approved remedy would be defeated, since subrogation depends upon the previous conduct of the dominant creditor, either in disregarding his duty to seek the property not covered by the junior lien, and in enforcing it against that upon which the junior lien rests, or, as said by Bispham, where he "has been guilty of some negligence or default." The

theory of subrogation would be incomplete without the supposition that the dominant creditor had either enforced his claim against the doubly burdened property, or had lost the right to pursue the property to which equity carries the junior lien in subrogation. The idea at the basis of the equity is that the dominant creditor, having otherwise ample security, shall not disappoint the junior creditor. Unless that which disappoints the junior creditor has been done there is nothing for which subrogation is awarded. To give the disappointed creditor "the benefit of another security in lieu of the one of which he has been disappointed," necessarily implies that he has been placed in a position by the dominant creditor where his security is not available. Bispham says, section 342, that "the right of marshaling cannot be defeated by the intervention of creditors of a later date," citing authority. We are convinced, therefore, that where, as in this case, a creditor takes a mortgage on property, it then being apparent that all prior liens can be fully paid from other porperty covered by them, the right to require such payment will continue and be protected as against such prior liens.

It is insisted, however, that the enforcement of the rule under the circumstances in this case is an injury to the appellant, now the dominant creditor by the purchase of the judgments, and that equity will not enforce the rule to the injury of a third person. As to the ownership of the judgments, we observe no stronger equity in the appellant than in the assignor, the original judgment creditor. Nor do we perceive that the trust deed added anything to the equities of the appellant, under the judgments, as against the appellee. Equity forbade the assignor of the judgments to enforce them so as to disappoint the appellee. In other words, good faith demanded that the

judgments should be enforced against No. 2, property encumbered only by their lien and ample to pay them. We know of no reason why this equity should be broken by the transfer of the judgments to another. The judgment creditor could perform no act affecting the equity in favor of the mortgagee. In the hands of the appellant the judgments have been held without enforcement, for the manifest purpose of pushing them over upon No. 1. The trust deed, the sales of property included in No. 2, and the application of the proceeds to credits in favor of the appellant, other than the judgments, have had the effect to remove much of No. 2 from the reach of the judgments, and to destroy, in the main, the possibility of subrogation. In other words, the judgments, as confessed by allegation, were purchased and employed by the appellant for its protection, that is, to secure the payment of its other claims from No. 2, hoping thereby to avoid the obligation to collect the judgments from that property and to be enabled to collect them, or such part as might be necessary, from No. 1. The appellant, as to the judgments, does not occupy the position of a third party; it occupies the position of the original judgment creditor. Nor is it, as the dominant lienor, injured by the rule here in question. If injured, it is not by the rule, but in the violation thereof by the appellant, in securing the diversion of No. 2 to other sources than the payment of the judgments. If, instead of a trust deed for appellant's benefit, Mackey had conveyed No. 2 to a stranger, it would not have been released from the lien of the judgments. If he had sold out a part of it, the residue would have been first subject to sale upon the judgments and then, for any balance, the part sold would have been subject to sale. This conclusion results from the universally

established equitable rule that property subject to a lien, if sold by the debtor in parcels, is subject to resale, for the discharge of the lien, in the inverse order of its alienation. Authorities are unnecessary to a proposition so thoroughly understood as this. The appellee, in taking its mortgage, occupied the position of a purchaser of a part of the property covered by a lien, and was entitled to require the remaining portion to be sold first for the payment of the lien. *Hahn* v. *Behrman*, 73 Ind. 120; *Merritt* v. *Richey*, 97 Ind. 236; *Denton* v. *Ontario, etc., Bank*, 28 N. Y. Supp. 293; *Appeal of Robeson*, 117 Pa. St. 628, 12 Atl. 51; *Kendig* v. *Landis*, 135 Pa. St. 612, 19 Atl. 1058.

The trust deed and sales under it, for the appellant's benefit, had the effect to release the property from the lien of the judgments, as to the appellant, and such release would operate as a relinquishment of the right to go upon No. 1 for the judgments. *Alsop* v. *Hutchings*, 25 Ind. 347; *Turner* v. *Flenniken*, 164 Pa. St. 469, 30 Atl. 486, 44 Am. St. 624.

Cases in their essential features quite like the present are *Appeal of Robeson, supra,* and *Kendig* v. *Landis, supra.* In the first, Graham owned two tracts of land subject to two judgments in favor of Woods. Upon the Hale tract he gave two mortgages, and later gave one upon the Decatur tract. Both tracts were sold under the judgments, and the proceeds brought into court for marshaling. The appeal was on behalf of the mortgagees of the Hale tract, claiming precedence in distribution over the mortgage on the Decatur tract. The court said: "If the contest were one between the appellants and the debtor alone, can it be doubted that the appellants would in equity be entitled to have Woods resort to the proceeds of the Decatur tract in order that they might avail themselves of the proceeds of the Hale tract? As the equity is

against the debtor himself, certainly he would not be allowed to insist upon a *pro rata* payment of the Woods judgments from the two funds respectively, in order that he might pocket part of the money.

"But when the appellees subsequently recorded their mortgage upon the Decatur tract, it is contended that, as mortgagees, they acquired a lien, and that their equity was equal to that of the appellants; that the equities were *in equilibrio*. We do not think so. The appellants acquired against Graham, the mortgagor, the right to have his other lands, not included in the mortgage, applied first to the payment of the earlier judgments which were liens against them. This right it was not in the power of the mortgagor to defeat by confessing judgments to other creditors, or by contracting subsequent debts. *Bona fide* purchasers, and perhaps mortgagees, might be unaffected by an equity of which they had no notice in fact. *Hoff's Appeal*, 84 Pa. St. 42. But when the appellees took their mortgage they could plainly see that the Woods judgments were entered as first liens against the Decatur tract, and that their mortgage in the regular course of distribution, could not be paid until these judgments were satisfied. It is true that it appeared by the records that the Woods judgments were liens also upon the Hale tract, but the same search would show the existence of the appellants' mortgage. The appellees, in the absence of proof to the contrary, will be presumed to have taken their mortgage with full knowledge of all the facts disclosed by the record, and would thus be affected with notice of all the equities, which, owing to the peculiar condition of the respective liens, the appellants had as against the Woods judgments."

From the case of *Kendig* v. *Landis, supra,* we quote as follows: "The appellant has two funds out of

which to claim his money. One of the funds is the proceeds of the sale of the Manor township farm, which was sold by the sheriff for a sum sufficient to pay appellant's judgment in full. The money is in the hands of the sheriff, but the appellant declines to take it out. The other fund is the proceeds of the sale of the Millersville property. This property was sold by the sheriff subsequently to the sale of the Manor farm. The mechanics' lien creditors have a claim upon this fund, but they are subsequent to the lien of the plaintiff's judgment. The appellant insists upon his right to take his money out of the latter fund. If he succeeds, he takes the only fund the mechanics' lien creditors have.

"The application of the familiar rule that where one creditor has two funds out of which to make his money, and another creditor has but one, the creditor having the two shall first exhaust the fund upon which the other has no claim, would throw the appellant upon the Manor farm. This rule must prevail, unless the appellant has an equity which would make the application of the principle unjust in the particular instance. The reason why he objects to it is that he is the holder of a second judgment which is also a lien upon the two properties, but as to the Millersville property, it is subsequent to the mechanics' claims. Hence, he desires to first absorb the Millersville fund, in which case his second judgment is good upon the Manor farm. In this, however, he has no equity. When the mechanics put their work and materials upon the Millersville property, they could see, of course, that it was bound by the lien of appellant's first judgment. But they also knew that the same judgment was a lien on the Manor farm, and that said farm was amply sufficient to pay it. With this knowledge, they had a right to expect that the appellant

would seek to get his money out of the farm, and not deprive them of the security of their liens. They further knew that they could compel him to do so if necessary. Is this right to be taken away because the appellant acquired another judgment which was also a lien upon both properties, and which was entered after the mechanics' liens had attached to the Millersville property? The appellant has no equity as to his second judgment, for the reason that it is subsequent to the mechanics' liens, and. he cannot, by tacking his two judgments together, deprive the mechanics of their equity to have the first judgment satisfied out of the Manor farm."

Counsel for appellant rely with confidence upon *Gilliam* v. *McCormack*, 85 Tenn. 597, 4 S. W. 521. We make no effort to distinguish between that case and the general rules and authorities upon which we rely for our conclusion. It seems to support the appellant's contention, but, with deference, we submit that the weight of authority, and the necessary force of the rule of equity involved, lead to the conclusion we have reached. The rulings of the lower court were correct. The judgment is affirmed.