Leonard ENLOE, Plaintiff-Appellant,

v.

FRANKLIN BANK AND TRUST COMPANY,[1] Defendant-Appellee.

No. 1–782A156.

Court of Appeals of Indiana,
First District.

Feb. 22, 1983.
Rehearing Denied March 29, 1983.

1. Other parties to the action below were Junice Moran, Ruby Moran, Michael Moran, and the National Bank of Greenwood. However, only Leonard Enloe and the Franklin Bank and Trust Company are involved in this appeal.

James E. Hawes, Jr., Greenwood, for plaintiff-appellant.

Stephen L. Huddleston, Huddleston & Combs, Franklin, for Franklin Bank and Trust Co.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant Leonard Enloe (Enloe) appeals a judgment in the Brown Circuit Court in favor of the Franklin Bank and Trust Company (FBT). Enloe alleges the trial court erred in not ordering a marshaling of assets and in denying him the rights of a holder of a mechanics lien.

We affirm.

## STATEMENT OF THE FACTS

The financial affairs of Junice Moran are tangled, and this litigation involves numerous parties, security interests, counterclaims, cross-claims, and issues. For brevity and ease of understanding, an attempt is made here to state only those facts necessary for the decision of two narrow issues.

On October 4, 1978, Junice and Ruby Moran, husband and wife, borrowed the sum of $25,740.72 from FBT to finance the purchase of a 1974 Kenworth tractor. The title to the tractor was placed in the name of Junice Moran alone. The Morans executed an installment note to FBT and secured the same with a security agreement on the Kenworth tractor and a real estate mortgage on property of the Morans' held as tenants by the entireties.

On October 15, 1980, Junice Moran alone and Leonard Enloe entered into a conditional sales contract whereby Enloe sold a number of tractors and trailers to Junice Moran, taking in return the 1974 Kenworth tractor plus $3,000 "boot." The contract contained provisions for time payment and permitted Enloe to repossess upon default. It also contained a provision requiring the delivery of the Kenworth tractor within ten months, or earlier if the total balance due FBT was paid before ten months elapsed. Subsequent refinancing and security agreements were made by Junice Moran with the National Bank of Greenwood (NBG).

Moran defaulted in payments to FBT, Enloe, and NBG. Enloe filed his suit for replevin of the 1974 Kenworth tractor against Junice Moran. FBT filed its suit against both Junice Moran and Ruby Moran on its note and sought possession of the 1974 Kenworth tractor in accordance with its security agreement. No pleading requested a foreclosure of the real estate mortgage. Both cases were filed in the Johnson Circuit Court, venued to the Brown Circuit Court, and consolidated for trial. After trial, the trial court entered judgments on February 18, 1982, which it subsequently amended on April 5, 1982; the judgments were supported by lengthy findings of fact and conclusions of law. The portions of the amended judgments that concern us here are summarized as follows: (1) The court awarded a money judgment of approximately $12,500 to FBT against Junice Moran and Ruby Moran, and permitted

FBT to proceed against the 1974 Kenworth tractor in accordance with the security agreement. The court concluded that FBT's lien rights in the tractor were superior to Enloe's, including Enloe's claim for a $6,058.62 repair bill. No foreclosure of the real estate mortgage was ordered. (2) The court awarded a money judgment to Enloe against Junice Moran alone for $155,934, which amount included the repair bill on the Kenworth tractor in the amount of $6,058.62. The judgment further provided that Enloe's security interest in the 1974 Kenworth tractor was subordinate, or junior, to FBT's lien. The trial court did not grant Enloe the superior rights of a holder of a mechanics lien with respect to the repair bill. Further the trial court did not order the marshaling of assets to require FBT to proceed first against the real estate mortgage to satisfy its claim.

## ISSUES

Enloe presents two questions for review. He claims the trial court committed error in refusing:

 I. To order the marshaling of assets to require FBT to proceed first against the real estate mortgage, leaving to Enloe the Kenworth tractor to satisfy his claim.

 II. To grant Enloe the rights of a holder of a mechanics lien for the repair bill.

## DISCUSSION AND DECISION

*Issue I. Marshaling of assets*

 Marshaling assets is an equitable principle recognized in Indiana in accordance with which assets and securities of a debtor are resorted to or apportioned in such a manner as to secure protection of the rights of two or more creditors. 53 Am. Jur.2d *Marshaling Assets* § 1. The principle may be stated as follows: where a dominant creditor has access to two funds for the payment of his debts and another subordinate creditor is confined to only one of those funds, the dominant creditor will be compelled to exhaust the fund upon which the other creditor has no security before resorting to the additional fund. *Rownd v. State,* (1898) 152 Ind. 39, 51 N.E. 914; *The Bank of Commerce of Evansville, Indiana v. The First National Bank of Evansville, Indiana,* (1898) 150 Ind. 588, 50 N.E. 566; *Clark v. Manufacturers' Mutual Fire Insurance Company,* (1892) 130 Ind. 332, 30 N.E. 212; *Trentman v. Eldridge,* (1884) 98 Ind. 525; *Sanders v. Cook,* (1864) 22 Ind. 436; *Hannegan v. Hannah,* (1845) 7 Blackford 353; *Kline v. Hammond Machine and Forge Works,* (1920) 76 Ind.App. 573, 127 N.E. 220. *Hannegan, supra,* states that if the double-fund creditor has exhausted the fund bound for the debts of both creditors, leaving the other fund unexhausted, that fund may be reached by the unsatisfied creditor by the application of the principle of substitution. In essence, the doctrine of marshaling assets requires the double-fund creditor to obtain satisfaction from the fund that the single-fund creditor cannot reach. 53 Am. Jur.2d *Marshaling Assets* § 1.

Enloe seeks to invoke the doctrine of marshaling assets to require FBT, which has access to two funds, the 1974 Kenworth tractor and the real estate mortgage, to proceed first against the real estate mortgage leaving him access to the proceeds of the Kenworth tractor, should any remain.

FBT counters Enloe's argument by claiming that the doctrine does not apply here for the following reasons: (1) The paramount creditor, FBT, will have to engage in further litigation, that is, foreclose the mortgage. (2) The second fund of the doubly secured creditor, FBT, does not come from a common source. The tractor is the sole property of Junice Moran. However, the real estate is held as tenants by the entireties by both Morans, and a tenancy by the entireties is a separate entity. (3) The equities of the third-party wife, Ruby Moran, who is only a surety on the note to FBT, are superior to Enloe's claim for marshaling. We agree with FBT's contentions.

 The principle of marshaling assets is not an absolute rule of law or an absolute legal right. It is founded on principles of natural justice and is applied only where its

application will do justice, not only to the debtor and creditor, but to third parties as well. A judgment creditor may invoke the principle only if it will benefit him without injuring others. It is called into action by the benevolence of the court in its sound discretion. The fact that its invocation is necessary for the satisfaction of the claims or liens of both creditors constitutes the main ground for equitable interference. 55 C.J.S. *Marshaling Assets and Securities* § 1. The doctrine will not be invoked so as to injure or prejudice the doubly-secured creditor, put his claim in jeopardy, prevent him from receiving complete satisfaction, delay satisfaction of his claim, or involve him in further litigation. *See* 2 Pomeroy Equity Jurisprudence §§ 396, 410; 4 Pomeroy, *supra*, § 1414; McClintock On Equity § 205; 55 C.J.S. *Marshaling Assets and Securities* §§ 1, 4.

■ More specifically, before a court of equity will marshal assets between two persons it must appear that (1) they are creditors of the same debtor, (2) there are two funds belonging to that debtor, and (3) only one of the creditors has the right to resort to both funds. *See Trentman, supra; Sanders, supra;* 53 Am.Jur.2d *Marshaling Assets* § 7. Marshaling will not be permitted to the prejudice of a third party. Pomeroy, *supra*, 55 C.J.S. *Marshaling Assets and Securities* § 5. The rule of marshaling applies *only* where both funds are in the hands of a common debtor of both creditors.

■ The requirement of a common debtor is not satisfied where the assets of one fund are partnership assets, and the assets of the other fund are individual assets of a partner. *Savings and Loan Corporation v. Bear,* (1930) 155 Va. 312, 154 S.E. 587; *see* 53 Am.Jur.2d *Marshaling Assets* § 10. It has been held in other jurisdictions that the doctrine will not be applied if it requires the paramount creditor to engage in further litigation such as foreclosure. *Greenwich Trust Company v. Tyson,* (1942) 129 Conn. 211, 27 A.2d 166; *Heidelbach v. Fenton,* (1899) 180 Ill. 312, 54 N.E. 329; *Boone v. Clark,* (1889) 129 Ill. 466, 21 N.E. 850; *Tod v. Mitchell,* (1917) 228 Mass. 541, 117 N.E. 899.

■ Marshaling assets has no application where one fund belongs to the common debtor and the other fund belongs to a third party such as a surety. *Id.* § 6. *Gains v. Hill,* (1912) 147 Ky. 445, 144 S.W. 92, recites:

> "[A] second mortgagee having a lien on a husband's property can not require a prior mortgagee having a lien on the same property, and also on the property of the wife which was pledged merely to secure the husband's debt, first to exhaust the wife's property before proceeding to subject the husband's property."

*Id.* at 448, 144 S.W. 92; *See Bartley v. Pikeville National Bank & Trust Company,* (1975) Ky., 532 S.W.2d 446; 55 C.J.S. *Marshaling Assets and Securities* § 6.

Such results have been reached in Indiana cases. *Sanders, supra; Trentman, supra.* In *Trentman* a husband and wife executed a mortgage to one Widney, to secure the sole debt of the husband. Part of the mortgaged property was the husband's sole property, and a part of it was the wife's sole property. A later mortgage, subordinate to the first, was executed by the husband and wife to Trentman, for the husband's sole debt, upon only the husband's property. The Court held that upon Widney's foreclosure the wife had a right to require Widney to first satisfy the debt out of the property owned by the husband, and that this right was paramount to Trentman's right. The Court said:

> "The appellant invokes, in his behalf, the familiar equitable principle that where one creditor has a lien on one of two funds, and the other creditor has a lien on the same fund and also on another, equity will compel him to first exhaust the fund free from the lien of the creditor whose rights extend only to a single fund. *Applegate v. Mason,* 13 Ind. 75; *Hahn v. Behrman,* 73 Ind. 120. If the struggle were between the senior mortgagee and the appellant, there would, perhaps, be no great difficulty, but the contest is not confined to these parties, for Mrs. Eldridge, who mort-

gaged her separate property to secure her husband's debt, has rights which accrued prior to those of the second mortgagees, and are entitled to high consideration. The claim of the appellant rests upon one parcel of property, and is founded upon a claim against the husband alone, and in such a case the equitable principle can not be used to overthrow the rights of a wife who has joined in executing a senior mortgage to secure her husband's debt. 1 Story Eq.Jr. 634; 3 Pomeroy Eq. 214." 98 Ind. at 529–30.

In *Sanders, supra,* a judgment was obtained by Sinker against Barmes, Wonderly, *et al.* Later one Spaugh obtained a judgment against Barmes alone. The Court stated that in order to entitle either creditor to have the funds marshaled, there must be a common debtor against whom both creditors have claims. The Court refused to apply the principle of marshaling assets to require Sinker to execute on Wonderly and exhaust those assets first, leaving Barmes' assets to Spaugh. The Court said:

"This would be in accordance with the rule in equity, that where one creditor could look to two funds of a debtor, and another creditor could look to but one of said funds, the former might be compelled to exhaust that which the latter could not reach before he could seize upon the other, which the latter could reach. We say the relief prayed would be in accordance with this equitable doctrine, if the same is applicable to the facts stated. But it is not, for the reason that in this instance there was not a common debtor against whom different creditors had claims, which must be the case to entitle either to have the securities or funds marshaled. It is said that 'this may be illustrated by supposing the case of a joint debt due to one creditor by two persons, and a several debt due by one of them to another creditor. In such a case, if the joint creditor obtains a judgment against the joint debtors, and the several creditor obtains a judgment against his own several debtor, a Court of equity will not compel the joint creditor to resort to the funds of one of the joint debtors, so

as to leave the second judgment in full force against the funds of the other several debtor. At least it will not do so, unless it should appear that the debt, though joint in form, ought to be paid by one of the debtors only, or there should be some other supervening equity.' 1 Story Eq. sec. 642."

22 Ind. at 438–39.

 In Indiana a husband and wife are one person so far as such concept pertains to the real estate held by them as tenants by the entireties. *National City Bank of Evansville v. Bledsoe,* (1957) 237 Ind. 130, 144 N.E.2d 710. An estate by the entireties is immune to seizure for the satisfaction of the individual debt of either spouse. *Eilts v. Moore,* (1946) 117 Ind.App. 27, 68 N.E.2d 795. In effect the estate by the entireties is an entity separate from the individual estates of the spouses.

 Therefore, in the case at bar, the requirements necessary to invoke the doctrine of marshaling assets are lacking in that (1) FBT and Enloe are not creditors of the same debtor, and (2) the two funds do not belong to the same debtor. As in *Trentman,* the equities of Ruby Moran are not to be lightly discarded; she joined in securing a debt for her husband, and is entitled to have his individual property applied first.

We are of the opinion that the doctrine of marshaling assets does not apply to the facts of this case.

*Issue II. Mechanics lien*

The unchallenged findings of fact and conclusions of law as well as Enloe's concessions in his brief demonstrate that pursuant to his contract with Junice Moran, Enloe took possession of the 1974 Kenworth tractor. He made repairs on it in the amount of $200 and paid others the sum of $5,858.62 to make additional repairs. These repairs were necessary to keep the tractor in good working order. The trial court held that these amounts were due to Enloe from Junice Moran and Enloe was entitled to a lien on the tractor, but that Enloe's lien was subordinate to the lien of FBT. Enloe

claims that he has a mechanics lien which is superior to FBT's lien.

Ind.Code 26–1–9–310 under the U.C.C. provides that:

"When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."

 Three statutes are known to us which create a lien in favor of a mechanic or garageman for the repair of a motor vehicle, Ind.Code 32–8–31–1 *et seq.;* Ind. Code 32–8–30–1 *et seq.;* and Ind.Code 9–9–5–6. These statutes create a lien in favor of mechanics, tradesmen, and other persons engaged in the business of repairing motor vehicles. Ind.Code 9–9–5–6 and 26–1–9–310 refer only to repairs in the ordinary course of business. Enloe was not a mechanic, tradesman, or garageman; he was the owner under contract and had hired others to make most of the repairs. Therefore, he cannot claim a superior lien under those statutes.

 However, he makes no attempt to claim a superior lien under the above statutes. Instead, he makes the following argument. While admitting he took possession as owner pursuant to the October 15, 1980 contract with Moran, he claims that FBT not only consented to the repairs but required them in the security agreement. The repairs served to preserve and increase the value of the tractor, and to permit FBT to benefit from the repairs without compensation to Enloe would unjustly enrich FBT. He cites, primarily, section 162 of the Restatement of Restitution to support his unjust enrichment argument.

The security agreement between FBT and Moran prohibited assignment of the tractor without FBT's written permission. Nevertheless, Enloe took Moran's assignment, and there is no showing of any consent by FBT. The security agreement provides that the borrower will " . . . keep the

Collateral in good order and repair and will not waste or destroy the Collateral . . . ." Enloe took the transfer with knowledge of the security agreement and subject to it. The purpose of the repair clause was to preserve FBT's collateral from deterioration. As assignee of Moran, Enloe was doing only what was required to preserve the collateral. He cannot now force FBT to absorb that loss.

For the above reasons this cause is affirmed.

Affirmed.

ROBERTSON, P.J., and RATLIFF, J., concur.