**INDIANA LAWRENCE BANK,**
Appellant–Defendant,

v.

**PSB CREDIT SERVICES, INC.,**
Appellee–Plaintiff,

and

**James W. Zimmerman and Salin Bank
& Trust Company, Appellees–
Defendants,**

**Indiana Lawrence Bank,**
Appellant–Plaintiff,

v.

**United States Of America,**
Appellee–Defendant.

No. 25A03–9801–CV–24.

Court of Appeals of Indiana.

Feb. 26, 1999.

Robert L. Nicholson, Beckman Lawson, LLP, Fort Wayne, Indiana, Attorney for Appellant.

James T. Hodson, Cheryl M. Knodle, Ball Eggleston Bumbleburg McBride Walkey & Stapleton, Lafayette, Indiana, Attorneys for Appellees.

## OPINION

SHARPNACK, Chief Judge

This case comes to us on interlocutory appeal. Indiana Lawrence Bank ("ILB") appeals the trial court's order marshaling assets resulting from foreclosure of properties owned by James and Marilee Zimmerman.[1] ILB raises three issues which we consolidate and restate as whether the trial court properly marshaled these assets with respect to ILB and a second creditor, PSB Credit Services ("PSB"). We affirm.

The relevant facts are not in dispute. The Zimmermans owned two pieces of property that are at issue in the present case. These include an office building ("Office") and a residential duplex ("Duplex"). In 1988, the Zimmermans signed a note and mortgage to ILB. This 1988 mortgage was a first lien on both the Office and Duplex ("ILB 1988 Note"). In 1991, the Zimmermans signed a

---

**1.** Both James and Marilee are now deceased. Accordingly, the trial court substituted as defendants the co-administrators of James's estate and his heirs at law. Although the co-administrator and heirs at law have been substituted, for purposes of clarity, we will use "Zimmermans" throughout this opinion to refer to the debtor defendants.

second note and mortgage to PSB. This 1991 mortgage was a second lien only on the Office ("PSB 1991 Note"). In 1993, the Zimmermans signed a third note and mortgage to ILB. This 1993 mortgage was a third lien on the Office and a second lien on the Duplex ("ILB 1993 Note").

On July 30, 1996, PSB filed a foreclosure action to foreclose its mortgage on the Office because its 1991 note was in default. PSB claims it is owed $177,671.54 on its 1991 note.[2] ILB was named in the foreclosure action so that it could answer for any interest it could claim in the Office. On August 23, 1996, ILB answered PSB's complaint stating that it has an interest in the Office by virtue of its 1988 mortgage. In addition, ILB filed a cross-claim against the Zimmermans and PSB seeking to foreclose the 1993 mortgage on the Office.

On October 18, 1996, ILB filed a separate lawsuit to foreclose its 1993 mortgage on the Duplex. On January 22, 1997, the trial court entered judgment in favor of ILB for $77,047.72 on the ILB 1993 mortgage on the Duplex. ILB did not foreclose on the ILB 1988 mortgage, the first lien on the Duplex and Office, nor did the trial court's foreclosure on the Duplex include the ILB 1988 mortgage. On April 14, 1997, a foreclosure action was brought by ILB to foreclose on a federal tax lien on the Duplex because it had been omitted in the first foreclosure action. On March 11, 1997, the Duplex was sold to ILB at a sheriff's sale for $66,000. The $66,000 was applied solely to ILB's judgment on the 1993 note.

On April 29, 1997, ILB filed a motion for summary judgment in PSB's foreclosure action against the Office. In addition, ILB filed a counterclaim and cross-claim asserting that it was owed $70,249.04 on its 1988 note and $10,405.34 its 1993 note.[3] On June 18, 1997, PSB filed a motion in equity to marshal the assets of debtor. Specifically, PSB re-

quested that the Office and Duplex be marshaled. On October 2, 1997, the trial court held a hearing on the motion to marshal. On November 12, 1997, the trial court granted in part the motion to marshal the assets. The trial court ordered "that the proceeds of sale of the property referred to as the "duplex" be pro-rated by Indiana Lawrence Bank against the first mortgage and the second mortgage in the proportion in which those mortgages existed upon the date of the sale." Record, p. 14. ILB appeals the partial grant of the motion to marshal.

■ The issue is whether the trial court, sitting in equity, properly marshaled the assets of the Zimmermans. Generally, particular deference is given to the judgment of the trial court where the proceeding sounds in equity and judgments in equity are clothed in a presumption of correctness. *Mutual Sec. Life Ins. Co. v. Fidelity and Deposit Co. of Maryland,* 659 N.E.2d 1096, 1102 (Ind.Ct. App.1995), *trans. denied.* When reviewing cases of equity, the trial court's findings and judgment will be reversed only if clearly erroneous, that is, only if we are left with a definite and firm conviction that a mistake has been made. *Burnett v. Heckelman,* 456 N.E.2d 1094, 1097 (Ind.Ct.App.1983). We look only to the evidence and inferences therefrom supporting the judgment, neither reweighing the evidence nor judging the credibility of witnesses, and will reverse only where the evidence leads to a conclusion directly opposite to that reached by the trial court. *Indiana High School Athletic Ass'n, Inc. v. Schafer,* 598 N.E.2d 540, 557 (1992), *trans. denied.*

■ ILB asserts that the trial court erred by marshaling the assets of the Zimmermans. "Marshaling assets is an equitable principle recognized in Indiana in accordance with which assets and securities of a debtor are resorted to or apportioned in such

---

2. We obtained the amount due from PSB's complaint. This amount varies only slightly from that stated in the trial court's memorandum that states that the second mortgage on the Office (PSB 1991 lien) "was not being paid and had the total sum due of $177,675.54 as of July 19, 1996 with $39.583 accumulating per day." Record, p. 38.

3. ILB claimed the $70,249.04 was past due as of April 21, 1997, and the $10,405.34 was past due as of March 11, 1997. The $10,405.34 was the amount owed on the ILB 1993 lien after the $66,000 in proceeds from the sale of the Duplex had been applied to the $77,047.72 judgment on the Duplex mortgage.

a manner as to secure protection of the rights of two or more creditors." *Enloe v. Franklin Bank and Trust Co.,* 445 N.E.2d 1005, 1007 (Ind.Ct.App.1983). The principle of marshaling assets is: "where a dominant creditor has access to two funds for the payment of his debts and another subordinate creditor is confined to only one of those funds, the dominant creditor will be compelled to exhaust the fund upon which the other creditor has no security before resorting to the additional fund." *Id.* (citing *Rownd v. State,* 152 Ind. 39, 51 N.E. 914 (Ind.1898), *reh'g denied.; Bank of Commerce of Evansville, Indiana v. First Nat'l Bank of Evansville, Indiana,* 150 Ind. 588, 50 N.E. 566 (Ind.1898); *Clark v. Mfrs.' Mutual Fire Ins. Co.,* 130 Ind. 332, 30 N.E. 212 (Ind.1892); *Trentman v. Eldridge,* 98 Ind. 525 (Ind. 1884); *Sanders v. Cook,* 22 Ind. 436 (Ind. 1864); *Hannegan v. Hannah,* 7 Blackford 353 (1845); *Kline v. Hammond Mach. and Forge Works,* 76 Ind.App. 573, 127 N.E. 220 (Ind.Ct.App.1920)). If the double-fund creditor has exhausted the fund bound for the debts of both creditors, leaving the other fund unexhausted, that fund may be reached by the unsatisfied creditor by the application of the principle of substitution. *Id.* "In essence, the doctrine of marshaling assets requires the double-fund creditor to obtain satisfaction from the fund that the single-fund creditor cannot reach." *Id.*

 The principle of marshaling assets is not an absolute legal right or an absolute rule of law. *Id.* "It is founded on principles of natural justice and is applied only where its application will do justice, not only to the debtor and creditor, but to third parties as well." *Id.* at 1007–1008. "A judgment creditor may invoke the principle only if it will benefit him without injuring others." *Id.* at 1008. "Marshaling of assets is called into

action by the benevolence of the court in its sound discretion." *Id.* The main ground for equitable interference is that it is necessary for the satisfaction of the claims or liens of both creditors. *Id.* The doctrine will not be invoked so as to injure or prejudice the doubly-secured creditor, put his claim in jeopardy, delay satisfaction of his claim, prevent him from receiving complete satisfaction, or involve him in further litigation. *Id.* "[B]efore a court of equity will marshal assets between two persons it must appear that (1) they are creditors of the same debtor, (2) there are two funds belonging to that debtor, and (3) only one of the creditors has the right to resort to both funds." *Id.* The rule of marshaling will apply only where both funds are in the hands of a common debtor of both creditors. *Id.*

ILB first asserts that the trial court's final judgment on the sale of the Duplex precludes the use of marshaling to alter the effect of that judgment. PSB responds that the finality of the sale of the Duplex does not bar the trial court from granting it equitable relief.

However, we need not address ILB's contention that a final judgment cannot be changed by a marshaling order because, under the circumstances here, the final judgment is not being affected.[4] The trial court did not overturn the final judgment of foreclosure on the Duplex, alter the ownership of the duplex, or rescind the sheriff's sale. The trial court simply took into consideration the effect that the final judgment of foreclosure of the 1993 lien on the Duplex had on PSB, a junior lien holder. The trial court used the equitable principle of marshaling assets to protect the rights of PSB. *See Enloe,* 445 N.E.2d at 1007. The trial court effectively reduced the amount of the proceeds available to ILB from the eventual sale of the Office by crediting some of the proceeds from the

---

4. ILB cites *Evansville Am. Legion Home Ass'n v. White* to support its contention. *Evansville Am. Legion Home Ass'n v. White,* 141 Ind.App. 574, 230 N.E.2d 623, 628 (Ind.Ct.App.1967), *cert. denied.* However, *White* does not support ILB's position because it is factually dissimilar. In *White,* the appellee was a party to an action where judgment was entered. *Id.* Subsequently, the appellee wanted to assert another claim based upon the same subject matter. The first judgment disposed of the subject matter of the

litigation and terminated the rights of the appellee because she did not object to the entry of the judgment, appeal the judgment, or move for a new trial. *Id.* As such, this court found that the judgment was final. *Id.* Here, ILB did not even name PSB as a party in or notify PSB of its Duplex foreclosure and PSB is not trying to bring a suit against ILB on a subject matter it previously litigated. Therefore, *White* is not applicable to this case.

sale of the Duplex to the 1988 note. Because we disagree with ILB's assertion that the final judgment was altered by marshaling, we will not address further its contention.

■ ILB next asserts that the assets should not have been marshaled under Indiana law. ILB first contends that marshaling of assets is inapplicable in this case because it owned the Duplex. ILB states that at the time of the marshaling order the Zimmermans did not own both the Duplex and the Office because, during the course of PSB's foreclosure on the Office, ILB acquired ownership of the Duplex by virtue of its foreclosure of its second lien and the resulting sheriff's sale. Under *Enloe*,[5] for a trial court to marshal assets, both funds must belong to a common debtor of both creditors. *Enloe*, 445 N.E.2d at 1008. Based on *Enloe*, ILB argues that it is mandatory that at the time of the marshaling the Zimmermans owned both the Duplex and Office. In *Enloe*, we held that the doctrine of marshaling does not apply when the second fund of the doubly secured creditor does not come from a *"common source." Id.* at 1007, 1009 (emphasis added). Here, the Zimmermans owned both the Office and the Duplex when the liens attached and when PSB initiated the foreclosure action on the Office. Shortly after PSB initiated its foreclosure action on the Office, ILB foreclosed on the Duplex and purchased it in the subsequent sheriff's sale. We find that because both the Office and the Duplex belonged to common debtors at the

time PSB brought the foreclosure action on the Office, both funds came from a common source and marshaling by the trial court was permissible. *See id.* at 1007, 1009. We refuse to endorse ILB's action by construing the requirements of the equitable remedy of marshaling assets in an overly restrictive manner.

■ ILB next argues that the principle of marshaling cannot be used here because marshaling harms it as a doubly-secured creditor. The doctrine of marshaling will not be invoked so as to injure or prejudice the doubly-secured creditor. *Enloe*, 445 N.E.2d at 1008. However, one creditor cannot use its position as the holder of two liens to deprive an intervening creditor of its equity to have its lien satisfied. *See Bank of Commerce of Evansville, IN v. First Nat'l Bank of Evansville*, 150 Ind. 588, 595–597, 50 N.E. 566, 569 (Ind.1898) (quoting *Kendig v. Landis*, 135 Pa. 612, 19 A. 1058 (1890)). "[T]he right of marshaling cannot be defeated by the intervention of creditors of a later date." *Id.* at 592, 50 N.E. at 568.

Here, ILB argues that its 1988 lien (primary lien) and its 1993 lien (junior lien) on the Duplex should be treated as one debt in considering whether ILB will be harmed as doubly-secured creditor. ILB asserts that it should not bear any risk of loss on its junior lien on the Duplex. This assertion defies the definition of a junior or second lien.[6]

---

**5.** The facts of this case are distinguishable from those in *Enloe* where the funds belonged to different debtors from the time the liens attached. *Enloe*, 445 N.E.2d at 1007. In *Enloe*, Junice Moran, the wife, was the sole owner of a tractor. *Id.* at 1006. Junice and Ruby Moran, husband and wife owned, as tenants by the entireties, a piece of real estate. *Id.* The couple borrowed $25,740.72 from Franklin Bank and Trust Company ("FBT") secured by the tractor and the real estate. *Id.* Subsequently, Junice agreed to deliver the tractor to Leonard Enloe pursuant to a conditional sales contract. *Id.* The FBT loan went into default. *Id.* Junice also defaulted in her payment to Enloe. *Id.* As a result, FBT filed a suit against both Junice and Ruby and sought possession of the tractor pursuant to the security agreement. *Id.* FBT made no request for foreclosure on the real estate. *Id.* Enloe filed suit for replevin on the tractor. *Id.* The trial court found that Enloe's claim to the tractor was junior to that of FBT's on the tractor. *Id.* at 1007. The

trial court did not order the marshaling of assets to require FBT to proceed first against the real estate to satisfy its claim. *Id.* On appeal Enloe sought to invoke the doctrine of marshaling assets to require FBT, which had access to two funds, the tractor and the real estate, to proceed first against the real estate leaving Enloe access to the proceeds from the tractor should any remain. *Id.* This court determined that the doctrine of marshaling did not apply because the second fund (the real estate) of the doubly secured creditor (FBT) did not come from a common source. *Id.* at 1007, 1009. The tractor was the sole property of Junice, while the real estate was held as tenants by the entireties by both Junice and Ruby, and a tenancy by the entireties is a separate entity. *Id.* at 1007.

**6.** Junior lien is defined as a "Lien which is subordinate to a prior lien." BLACK'S LAW DICTIONARY 851 (6th ed. 1990). Second lien is defined as "One which takes rank immediately after a

ILB further maintains that the trial court's marshaling reallocated the risk of loss between it and PSB. Specifically, ILB argues that because the marshaling decreases the amount owed on the first mortgage and increases its exposure on its third mortgage on the Office it will be harmed. This may be true, but only to the extent that ILB chose to take a risk when it became junior lien holder on the properties. ILB cannot use its unique position as both a primary lien holder and a junior lien holder to recover more on its junior lien at the expense of PSB, as an intervening lien holder, than it would have otherwise been able to recover. *See Bank of Commerce*, 150 Ind. at 595–597, 50 N.E. at 569. ILB fails to recognize that, here, it wears two distinct hats. One of a primary lien holder and one of a junior lien holder. The ILB 1993 mortgage is junior in time to the ILB 1988 mortgage and the PSB 1991 mortgage. When accepting the 1991 mortgage, PSB could see that it was junior to the ILB 1988 mortgage. PSB had a right to rely on the Duplex as sufficient security for ILB to recover on its first mortgage when PSB assessed its risk in becoming a secondary lien holder on the Office. With this knowledge, PSB had a right to expect that ILB would seek the money out of the Duplex first to satisfy its 1988 lien and not to deprive PSB of its security in the Office. *See id.*, 150 Ind. at 595–597, 50 N.E. at 569. Furthermore, PSB had a right in equity to compel ILB to first look to the Duplex if necessary. *See id.* at 597, 50 N.E. at 569. PSB could not have expected to become junior to a later mortgage by ILB. It would be unfair to take away PSB's rights because ILB acquired a judgment on its 1993 lien which was also a lien against both properties. *See id.*, 150 Ind. at 595–597, 50 N.E. at 569.

It is likely that the sale of both assets will be insufficient to satisfy all three liens. An offer to purchase has been made on the Office for $170,000. ILB should be able to fully recover the remaining debt on its primary lien from the foreclosure and sale of the Office. As such, the marshaling will not result in any prejudice to ILB as a doubly-secured creditor on its primary lien. *See Enloe*, 445 N.E.2d at 1008. As to its junior lien (ILB 1993 lien), on the Office, ILB must take its place in line behind PSB and will likely suffer a loss due to its position.[7] Such is the risk a creditor takes when it chooses to become a secondary or tertiary lien holder. ILB will not suffer any prejudice on its primary lien and any loss on its junior lien will be by virtue of its position line. Therefore, marshaling is proper. *See Enloe*, 445 N.E.2d at 1008.

In sum, we conclude that the trial court properly applied marshaling in these circumstances and its resolution is fair. Therefore, we find that the trial court's decision was not clearly erroneous. *See Burnett*, 456 N.E.2d at 1097.

Affirmed.

Hoffman, J., concurs.

Sullivan, J., concurs with separate opinion.

SULLIVAN, Judge, concurring

I concur in the majority opinion except as to that portion which concludes that the marshaling order does not affect the judgment of foreclosure of the 1993 ILB lien upon the Duplex, the foreclosure sale itself, and the distribution of the proceeds of the sale.

The marshaling order required ILB to apply a portion of the $66,000 foreclosure proceeds to the 1988 ILB mortgage which was not the subject of foreclosure. Because the foreclosure only concerned the $77,000 debt represented by the 1993 mortgage, absent the marshaling order the entire $66,000 pro-

first lien on the same property and is next entitled to satisfaction out of the proceeds." *Id.* at 1352.

**7.** ILB is fortunate that the trial court did not allocate all of the proceeds from the sheriff's sale of the Duplex to the ILB 1988 lien, which it could have done. A first lien is defined as "One which takes priority or precedence over all other charges or encumbrances upon the same piece of property, and which must be satisfied before such other charges are entitled to participate in the proceeds of its sale." BLACK'S LAW DICTIONARY 635 (6th ed. 1990). Similarly, a first mortgage is defined as "The senior mortgage which, by reason of its position, has priority over all junior encumbrances. The holder of the first or senior mortgage has priority right to payment on default." *Id.* at 635–636.

ceeds would have been applied to that debt. The effect of marshaling is to reduce the amount contemplated by the foreclosure decree which would be applied to the debt represented by that foreclosure. Regardless of whatever price the property sold for at the sale, by requiring a portion of those proceeds to be applied to a different obligation, the foreclosure decree and its contemplated results were affected.[8]

Notwithstanding this fact, the impact of marshaling upon the foreclosure decree is not prohibited. To hold otherwise would be to frustrate the very reason and equitable purposes of the marshaling doctrine. As well stated by the majority: "ILB cannot use its unique position as both a primary lien holder and a junior lien holder to recover more on its junior lien at the expense of PSB, as an intervening lien holder, than it would have otherwise been able to recover." 706 N.E.2d at 575.

I therefore concur in the affirmance of the trial court's marshaling order.

---

**8.** While I accept the position of ILB that the decree foreclosing the 1993 lien was affected by the marshaling order, I note a seeming inconsistency in the arguments presented. On the one hand, ILB argues that its 1988 lien (primary lien) on the Office and its 1993 (junior lien) on the Duplex should be treated as one debt. (See App. Br. at 10) Yet in its argument to the effect that the foreclosure decree on the 1993 lien was final and unalterable, ILB seeks to exclude the 1988 lien from any consideration so that marshaling would be precluded.